757 A.2d 842

**William FIORE, Appellant,**

**v.**

**Gregory WHITE, Warden of the State Correctional Institution at Pittsburgh; The Attorney General of the Commonwealth of Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Submitted March 14, 2000.

Decided Aug. 21, 2000.

James Brandon Lieber, Liber & Hammer, Pittsburgh, for William Fiore.

Robert A. Graci, Attorney General's Office, for White, Warden, & A.G.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, AND SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

The Supreme Court of the United States petitioned this Court for certification of a question of Pennsylvania law.[1] Writing for the Supreme Court, Justice Breyer sought certification for us to opine whether the interpretation of 35 P.S. § 6018.401(a),[2] set forth in *Commonwealth v. Scarpone*, 535 Pa. 273, 634 A.2d 1109, 1112 (1993), states the correct interpretation of the law of Pennsylvania at the date William Fiore's conviction became final. *Fiore v. White*, 528 U.S. 23, 120 S.Ct. 469, 145 L.Ed.2d 353 (1999). The Supreme Court explained that an answer to its question would assist it in determining the resolution of the federal constitutional questions raised by Fiore. We granted the petition for certification on December 20, 1999.

## FACTS AND PROCEDURAL HISTORY

William Fiore was the owner and operator of the Municipal and Industrial Disposal Company (MIDC) in Elizabeth Township, Allegheny County. In 1970, the Department of Environment Resources (DER), now the Department of Environmental Protection (DEP),[3] issued a permit to MIDC for the

1. Pursuant to this Court's Internal Operating Procedures, we may accept certification of questions from the Supreme Court of the United States. *See* 204 Pa.Code § 29.451; Internal Operating Procedures, Rules Regarding Certification of Questions of Pennsylvania Law.

2. 35 P.S. § 6018.401(a) provides the following:

 (a) No person or municipality shall store, transport, treat, or dispose of hazardous waste within this Commonwealth unless such storage, transportation, treatment, or disposal is authorized by the rules and regulations of the department; no person or municipality shall own or operate a hazardous waste storage, treatment or disposal facility unless such person or municipality has first obtained a permit for the storage, treatment and disposal of hazardous waste from the department; and, no person or municipality shall transport hazardous waste within the Commonwealth unless such person or municipality has first obtained a license for the transportation of hazardous waste from the department.

3. The legislature renamed "the Department of Environmental Resources" to "the Department of Environmental Protection," effective July 1, 1995. 71 P.S. § 1340.501.

temporary storage of solid and hazardous wastes, specifically fly ash from a power station. The permit provided, in detail, the manner in which MIDC could store waste and dispose of collected leachate. It did not authorize any off-site discharge of hazardous waste from the facility. Per the permit, MIDC installed monitoring systems to detect the presence of unpermitted waste discharge. DER subsequently amended the temporary permit, allowing the additional storage of demolition and industrial waste and extending the permit until 1982.

Following laboratory tests conducted from 1982 through 1983, DER informed Fiore that hazardous chemicals were migrating from his storage facility. Specifically, DER had discovered the presence of Benzene, Toluene, and Xylene (organic chemicals) in water discharging from MIDC.[4] In response to its findings, DER required MIDC to apply for a National Pollutant Discharge Elimination System (NPDES) permit. DER issued the NPDES permit to MIDC in December of 1983. The NPDES permit established a maximum level of allowable hazardous waste discharge from the facility. To circumvent the discharge restrictions, the general manager of MIDC, David Scarpone, acting pursuant to Fiore's instruction, directed two welders to modify a mine water discharge pipe. This modification allowed MIDC to control both the discharge of uncontaminated and contaminated waters and allow the flow of hazardous waste through the monitoring wells when detection by DER officials was unlikely.

In July of 1984, a DER inspector discovered an illegal modification. The Commonwealth subsequently filed multiple criminal charges against both Fiore and Scarpone. In 1986, the Commonwealth tried Fiore and Scarpone jointly before a jury in a trial limited to charges against both defendants. Later that same year, in a bench trial, Fiore was tried on charges not involving Scarpone. Among other offenses, a jury convicted Fiore and Scarpone of "operating a hazardous waste

4. Benzene, Toluene, and Xylene are listed as hazardous substances, pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980, *as amended* 42 U.S.C. 9601 *et seq.* 40 C.F.R. § 261.33 (2000).

638

storage, treatment or disposal facility" without a "permit." 35 P.S. § 6018.401(a). Although the Commonwealth conceded that both men had a permit to operate MIDC, the trial court accepted the prosecution's argument that their intentional alteration of the facility was such a significant departure from the terms of the permit that the operation of MIDC was without a permit. Only Fiore's conviction for violating Section 6018.401(a) of the Solid Waste Management Act[5] (SWMA) is at issue.[6] For Fiore's two counts of violating Section 6018.401(a), the trial court imposed two sentences, each of one-half to five years imprisonment, ten years probation, and a fine of $100,000, to run consecutively.

Fiore appealed to the Superior Court, which, acting *sua sponte*, removed the matter to the Commonwealth Court,[7] indicating that, pursuant to 42 Pa.C.S. § 762(a)(2)(ii),[8] the Commonwealth Court possesses exclusive jurisdiction over appeals involving criminal proceedings, which arise from violations of regulatory statutes administered by Commonwealth

5. Act of July 7, 1980, P.L. 380, 35 P.S. § 6018.101 *et seq.*

6. Fiore's two trials resulted in convictions of sixty counts of violations of the SWMA and other statutes.

7. Pursuant to 42 Pa.C.S. § 705, the Superior Court and the Commonwealth Court have the authority to transfer appeals. 42 Pa.C.S. § 705 provides the following:

> The Superior Court and the Commonwealth Court shall have power pursuant to general rules, on their own motion or upon petition of any party, to transfer any appeal to the other court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion.

8. 42 Pa.C.S. § 762(a)(2) provides the following:

> (a) General rule.—Except as provided in subsection (b), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:
>
> . . .
>
> (2) Governmental and Commonwealth regulatory criminal cases.— All criminal actions or proceedings for the violation of any:
> (i) Rule, regulation or order of any Commonwealth agency.
> (ii) Regulatory statute administered by any Commonwealth agency subject to Subchapter A of Chapter 5 of Title 2 (relating to practice and procedure of Commonwealth agencies). The term "regulatory statute" as used in this subparagraph does not include any provision of Title 18 (relating to crimes and offenses).

agencies. Acting on a Petition from Fiore, the Commonwealth Court transferred his appeal back to the Superior Court because the court found that the facts and issues of Fiore's appeal were closely related to another appeal taken by him to the Superior Court. In an unpublished memorandum decision, filed May 12, 1989, the Superior Court affirmed his Judgment of Sentence. *Commonwealth v. Fiore*, 391 Pa.Super. 634, 563 A.2d 189 (1989). Fiore petitioned this Court for allowance of appeal. On March 13, 1990, we denied the Petition. On June 1, 1990, ninety days after our denial of allowance of appeal, Fiore's conviction became final.

Scarpone, likewise, appealed his case to the Superior Court. However, after the Superior Court *sua sponte* transferred his appeal to the Commonwealth Court, Scarpone did not request a transfer back to the Superior Court. Thus, the Commonwealth Court heard the appeal of Scarpone. On August 5, 1991, the Commonwealth Court reversed his conviction on the charge of violating Section 6018.401(a). *Scarpone v. Commonwealth*, 141 Pa.Cmwlth. 560, 596 A.2d 892 (1991). The Commonwealth Court concluded that, at all times relevant to the charge, Scarpone had operated MIDC with a valid permit. Concerning the conviction for violating Section 6018.401(a), we affirmed the decision of the Commonwealth Court in an Opinion, filed on December 15, 1993. *Commonwealth v. Scarpone*, 535 Pa. 273, 634 A.2d 1109 (1993). We held that "to conclude that the alteration constituted the operation of a new facility without a permit is a bald fiction we cannot endorse." *Id.* at 1112.

Reacting to our decision in *Scarpone*, Fiore filed his second emergency application for extraordinary relief. He had filed his first in 1992, which we denied. He again requested that we take jurisdiction pursuant to the King's Bench powers, 42 Pa.C.S. § 726.[9] We denied Fiore's second application on

9. 42 Pa.C.S. § 726 provides the following:
 *§ 726 Extraordinary jurisdiction*
 Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary

March 22, 1994. Fiore next sought relief under the Post Conviction Relief Act (PCRA),[10] claiming that he was convicted of violating Section 6018.401(a), on facts that this Court has ruled are not a crime. On August 18, 1994, the PCRA court issued an Order, denying his Petition for collateral relief. Fiore appealed the decision of the PCRA court to the Superior Court, which affirmed with a published Opinion on September 20, 1995. *Commonwealth v. Fiore*, 445 Pa.Super. 401, 665 A.2d 1185 (1995). The Superior Court affirmed the decision of the PCRA court, reasoning that Fiore had previously litigated the sufficiency of the evidence issue and, based on state-law principles, the PCRA court had no legal duty to give retroactive effect to this Court's decision in *Scarpone*, which issued after Fiore's direct appeal had become final. *Fiore*, 665 A.2d at 1193. Fiore applied to this Court for relief through a Petition for Allowance of Appeal, which we denied on April 19, 1996. *Commonwealth v. Fiore*, 544 Pa. 623, 675 A.2d 1243 (1996).

Having extinguished his grounds for relief in the Commonwealth, Fiore filed a Petition for Federal Writ of Habeas Corpus, claiming that (1) the trial court convicted, sentenced, and incarcerated him on facts that did not constitute each element of 35 P.S. § 6018.401(a) and (2) the courts of Pennsyl-

jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

**10.** Act of May 13, 1982, P.L. 417, *last amended,* January 27, 1998, P.L. 20, 42 Pa.C.S. § 9541–9546.

The scope of the PCRA is stated, thus:

This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including *habeas corpus* and *coram nobis*. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction. *Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.*

42 Pa.C.S. § 9542.

vania denied him his federal rights of due process and equal protection by not applying our decision in *Scarpone* to his case. Acting on the Federal Magistrate's recommendation, the United States District Court for the Western District of Pennsylvania granted the writ.

The Commonwealth appealed to the United States Court of Appeals for the Third Circuit, which reversed the federal District Court. *Fiore v. White*, 149 F.3d 221 (3d Cir.1998). Following the case law of the Supreme Court of the United States, the Court of Appeals concluded that there was no federal constitutional requirement to compel states to apply their decisions retroactively. Because the United States Constitution does not compel states to give retroactive effect to state criminal decisions, the Court of Appeals held that our courts did not violate the federal right of due process by refusing to apply *Scarpone* to Fiore's collateral appeal. Likewise, the Court of Appeals could find no support from the decisions of the Supreme Court of the United States to require retroactivity based on equal protection grounds.

Fiore petitioned the Supreme Court of the United States for a grant of certiorari to review his Fourteenth Amendment Due Process Clause issue. U.S. Const. amend. XIV. On March 29, 1999, the Supreme Court granted certiorari. *Fiore v. White*, 526 U.S. 1038, 119 S.Ct. 1332, 143 L.Ed.2d 497 (1999). The Supreme Court of the United States has reserved judgment and further proceedings in this matter until this Court explains whether our decision in *Scarpone* stated a principle of law that existed in 1990 when Fiore's direct appeal was still pending. *Fiore v. White*, 528 U.S. 23, 120 S.Ct. 469, 145 L.Ed.2d 353 (1999).

## DISCUSSION

Fiore takes the position that *Scarpone* did not issue a new rule of law. He claims that we merely provided our first interpretation of an unambiguous statute. According to Fiore, *Scarpone* explained the intent of the legislature that Section 6018.401(a) of the SWMA requires operators of hazardous

waste facilities to possess a permit. Because that statutory provision was clear on its face, and *Scarpone* did not overrule any legal precedent, he argues that our interpretation of Section 6018.401(a) is an expression of the law from the date of the enactment of that statute. Fiore explains that fundamental fairness and constitutional protections necessitate against allowing our society to incarcerate a defendant, who was tried in a joint trial, for the same actions committed by a co-defendant, which we deemed did not violate Section 6018.401(a).

■ The Commonwealth argues that *Scarpone* created a new rule of law. In Pennsylvania, it is well established that a new rule of law will not apply retroactively "to any case on collateral review unless that decision was handed down during the pendency of appellant's direct appeal and the issue was properly preserved there, or ... was nonwaivable." *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180, 1183 (1986); *see Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1203 (1999); *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1348 (1997); *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 889 (1995), *cert. denied*, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995); *Commonwealth v. Melilli*, 521 Pa. 405, 555 A.2d 1254, 1259 (1989); *McCloskey v. W.C.A.B.*, 501 Pa. 93, 460 A.2d 237, 239 n. 3 (1983) (plurality opinion); *cf. Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897, 900 (1966) (interpretation of a statute "applicable to a case whose appeal has not yet been decided"). The Commonwealth's argument is that any court can create law with its decision. Until a court of greater jurisdiction reverses a decision of a lower court, or a court of equal jurisdiction overrules a decision, the law emanating from the decision remains law. The Commonwealth avers that when Fiore's conviction became final, the 1989 *Fiore* decision by the Superior Court was the controlling law concerning "permit" requirements in Section 6018.401(a). The primary justification for this is the need for finality in legal matters to accomplish an orderly administration of justice.

 Not every opinion creates a new rule of law. Generally, where we have yet to rule explicitly on an unresolved legal issue, the first decision providing a definitive answer announces a new rule of law. *See Todaro,* 701 A.2d at 1347 (holding that indication of preference against judicial activity, in *dicta,* does not acquire force of law). When this Court issues a ruling that overrules prior law, expresses a fundamental break from precedent, upon which litigants may have relied, or decides an issue of first impression not clearly foreshadowed by precedent, this Court announces a new rule of law. *Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441, 444 (2000); *Blackwell v. Commonwealth, State Ethics Committee,* 527 Pa. 172, 589 A.2d 1094, 1100, 1102 (1991); *Gillespie,* 516 A.2d at 1182; *see August v. Stasak,* 492 Pa. 550, 424 A.2d 1328, 1330 (1981); *see also Blystone,* 725 A.2d at 1203 (citing *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)) (for proposition that federal "case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government, or if the result was not dictated by precedent existing at the time the defendant's conviction became final"); *Christy,* 656 A.2d at 899 (holding that decision of Supreme Court of the United States that "broke with past precedent in Pennsylvania" created new principle of law for the Commonwealth); *Schreiber v. Republic Intermodal Co.,* 473 Pa. 614, 375 A.2d 1285, 1289–90 (1977) (finding that decision by Court of Appeals for Third Circuit, overruling a prior case from that court, did not create new rule of law because interim decisions by the Supreme Court of United States foreshadowed overruling).

██ A decision does not articulate a new rule of law when it "merely relie[s] upon a statutory interpretation which was not wholly without precedent." *McCloskey,* 460 A.2d at 239 n. 3; *see Surrick,* 749 A.2d at 445; see *also Blackwell,* 589 A.2d at 1102 (concluding that prior decision, which found statute was unconstitutional delegation of legislative power, declared no new rule of law). *Surrick* demonstrates a situation strikingly similar to the instant matter. In *Surrick,* the appellant

challenged the retroactive effect of another decision to his case. The appellant claimed that our decision in *Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 714 A.2d 402 (1998) announced a new scienter requirement for establishing attorney misrepresentation as a violation of Pennsylvania's Rule of Professional Conduct 8.4(c). Specifically, the appellant argued that *Anonymous Attorney A* added recklessness as a new element. We held that *Anonymous Attorney A* did not create a new standard of law; it merely clarified existing law. *Surrick*, 749 A.2d at 445. Our rationale was that there was no precedent that restricted the scienter requirement to intentional acts, and, prior to *Anonymous Attorney A*, it had been foreseeable that we would find that the rule defined professional misconduct to include misstatements made with reckless disregard for the truth or falsity of the contents.[11] *Id.*

There can be no change to statutory law when there has been no amendment by the legislature and no prior decision by this Court. Only the legislature has the authority to promulgate legislation. Our role is to interpret statutes as enacted by the Assembly. We affect legislation when we affirm, alter, or overrule our prior decisions concerning a statute or when we declare it null and void, as unconstitutional. Therefore, when we have not yet answered a specific question about the meaning of a statute, our initial interpretation does not announce a new rule of law. Our first pronouncement on the substance of a statutory provision is purely a clarification of an existing law.

Prior to our opinion in *Scarpone*, we had not examined Section 6018.401(a) of the SWMA. The only cases involving that statutory provision were the unpublished memorandum opinion from the Superior Court in its review of Fiore's direct appeal and the Commonwealth Court's published decision in

---

11. It must be noted that when we issued *Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 714 A.2d 402 (1998), the matter of *Surrick* was still pending on direct appeal, and the appellant challenged the retroactive application of *Anonymous Attorney A* to his direct appeal. *See Surrick*, 749 A.2d at 443.

*Scarpone.* As justification for accepting allowance of appeal,[12] we recognized in *Scarpone* that "[t]he two courts are clearly in conflict and this leaves the Attorney General's office ill-advised on how it should proceed in such situations." *Scarpone,* 634 A.2d at 1112. Consequently, we were not in a position to overrule a decision by this Court. Certainly, there was no narrowly defined body of law to follow concerning Scarpone's conviction for causing and assisting in the operation of a hazardous waste facility without a permit. Nevertheless, we cannot classify our ruling in *Scarpone* as one of first impression or without precedent. A case of first impression is one that presents an "entirely novel question of law," which "cannot be governed by any existing precedent." BLACK'S LAW DICTIONARY 635 (6th ed.1990). Our resolution of the conflict presented in *Scarpone* was governed by familiar rules of statutory interpretation, grounded in existing case law.

We did not provide a lengthy justification for our holding that the Commonwealth failed to prove all of the elements of Section 6018.401(a) against Scarpone. Our basis consisted of a common-sense reading of the statute and the Rules of Statutory Construction. *See Scarpone,* 634 A.2d at 1112 (stating that 1 Pa.C.S. § 1928(b)(1) requires that courts strictly construe penal provisions of statutes). We explained that regardless of the reprehensible actions taken by Scarpone in redirecting the flow of hazardous waste, a permit existed. By enacting Section 6018.401(a), the legislature made it illegal to own or operate a hazardous waste storage, treatment, or disposal facility without a permit. Because MIDC possessed a permit to operate, convicting Scarpone under that provision disregarded the plain meaning of the statute and the intent of the Assembly.

**12.** According to our Rules of Appellate Procedure:

> Except as prescribed in Rule 1101 (appeals as of right from the Commonwealth Court), review of a final order of the Superior Court or the Commonwealth Court is not a matter of right, but of sound judicial discretion, and an appeal will be allowed only when there are special and important reasons therefor.

Pa.R.A.P. 1114.

*Scarpone* did not announce a new rule of law. Our ruling merely clarified the plain language of the statute. Consequently, we answer the certified question in the affirmative. Our interpretation of 35 P.S. § 6018.401(a) in *Scarpone,* 634 A.2d at 1112 furnishes the proper statement of law at the date Fiore's conviction became final.

## CONCLUSION

Accordingly, having answered the question that we certified for review, we refer this matter back to the Supreme Court of the United States.