851 A.2d 870

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Luis CRUZ, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 22, 2002.

Dissenting Opinion of Castille, J. Submitted April 9, 2002.

Decided June 22, 2004.

John Packel, Karl Baker, Helen A. Marino, Philadelphia, for Luis Cruz.

Hugh J. Burns, Philadelphia, for the Com. of PA.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

In this appeal from the denial of a post-conviction petition, Appellant claims that he received disparate treatment on direct appellate review, as compared to that afforded to a co-defendant, and that this offends constitutional due process and equal protection norms and warrants collateral relief.

In October of 1991, an informant advised police that Patricia Melendez sold substantial quantities of cocaine from her residence at 5155 Pennway Street, Philadelphia. Detective Freddie Chaves investigated and developed additional information, which he passed on to other members of a narcotics unit of the district attorney's office, who, in turn, commenced periodic surveillance of the house.

On November 9, 1991, the informant advised Detective Chaves that he had recently purchased cocaine from Melendez. According to the informant, Appellant, who was in the house and in possession of cocaine at the time of this transaction, supervised the drugs in Melendez's absence. Based on the information gathered, a decision was made to seek judicial authorization for a premises search. While Detective Chaves drafted the warrant application, other detectives returned to maintain surveillance on the residence and await the warrant's issuance.

Subsequently, the surveillance team observed Melendez exiting the rear of the house and entering her vehicle. The

detectives stopped her at the end of the driveway, advised her that a search warrant was in process, and asked if she would accompany them into the house, to which Melendez acceded. A detective then searched Melendez's purse for weapons, finding a loaded handgun.[1] The detectives communicated that information via radio to Detective Chaves, who was still at his office drafting the affidavit of probable cause, and he included a general reference to the stop of Melendez's vehicle in the affidavit. Melendez then handed over the keys to the house to the surveillance detectives, who escorted her through the back door while communicating their position to other detectives watching the front.

Those officers then also entered through the unlocked, front door, after having knocked and announced their presence. From the living room, a detective observed Appellant standing by the kitchen sink holding a plastic bag containing a white substance, which Appellant slid into a kitchen drawer upon seeing the detectives.

The surveillance detectives secured the premises and they, Melendez, and Appellant waited in the living room until the search warrant was secured and, thereafter, the officers began the judicially-authorized search of the premises. In Melendez's bedroom, they located a shoe box covered with handwritten notations reflecting drug transactions, a substantial quantity of cash, another loaded handgun, and a digital pager. In Appellant's bedroom, detectives found twelve grams of cocaine, 214 grams of marijuana, and another pager. In the kitchen drawers, detectives found various packages of cocaine, including a one kilogram package (apparently worth at least $100,000 in drug trafficking circles), along with drug paraphernalia; throughout the kitchen they also located additional records of illicit transactions.

Appellant and Melendez were arrested, charged with drug offenses and conspiracy, and tried jointly. Both filed pretrial

---

1. Apparently as a consequence of a later search pursuant to the executed warrant, police discovered that Melendez's purse also contained a substantial amount of cash, as well as a tally sheet listing prices and quantities of cocaine.

motions to suppress all evidence that the police obtained as a result of their entry into and search of Melendez's house; Melendez also challenged the admissibility of the evidence obtained in the search of her purse prior to the entry.

The common pleas court denied suppression, and, following a jury trial, both Appellant and Melendez were convicted. Appellant was sentenced to an aggregate term of incarceration of nine to eighteen years and payment of a $50,000 fine. Melendez was similarly sentenced.

On appeal, the Superior Court affirmed in separate, memorandum opinions. Thereafter, the cases proceeded on independent time lines, since Appellant sought allowance of appeal in this Court, whereas Melendez initially pursued reargument in the Superior Court.

In May of 1994, this Court allowed appeal on Appellant's petition on a limited basis, with the issues accepted subsuming Appellant's challenge to the legality of the detectives' warrantless entry into Melendez's home. In November of that year, however, the Court dismissed the appeal as having been improvidently granted, with Messrs. Justice (later Chief Justice) Zappala and Cappy dissenting. *See Commonwealth v. Cruz*, 538 Pa. 550, 649 A.2d 657 (1994) (*per curiam*). Appellant timely petitioned for reconsideration, which was denied.

In the meantime, the Superior Court denied Melendez's petition for reargument, and she filed a petition for allowance of appeal, which was granted. Moreover, Melendez was successful in obtaining relief from her conviction and sentence in this Court. *See Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996). Initially, the Court found that warrantless detention and search of Melendez outside of her house was illegal, since police lacked probable cause to believe, and reasonable grounds to suspect, that she was engaged in criminal activity at the time of the stop. *See id.* at 328–29, 676 A.2d at 228–29 (citing *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881–82, 18 L.Ed.2d 1040 (1967) (probable cause); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (reasonable suspicion)). In this regard, the Court

rejected the Superior Court's conclusion that the stop and search of Melendez were warranted under the exigent circumstances exception to the warrant requirement, since the Court failed to discern any exigency where the detectives could have simply awaited the issuance of the search warrant that was in process. *See Melendez,* 544 Pa. at 330–31, 676 A.2d at 229. Thus, the Court determined that the evidence obtained from Melendez's purse should have been suppressed under Article I, Section 8 of the Pennsylvania Constitution. *See id.* at 331, 676 A.2d at 229–30.

Next, the Court considered the lawfulness of the search of Melendez's premises. In this regard, it rejected the Superior Court's conclusions that Melendez consented to return with the police, that exigent circumstances also justified the warrantless entry, and that, even if the entry was illegal in the first instance, the admission of the evidence obtained was nonetheless authorized under the independent source doctrine. Initially, the court found no evidence of free and voluntary consent on Melendez's part; rather, it viewed her conduct as in the nature of mere acquiescence. *See Melendez,* 544 Pa. at 331–32 & n. 8, 676 A.2d at 230 & n. 8. Regarding exigent circumstances, the Court admonished that, to the extent that the concern of the detectives was that Melendez's stop may have been observed by someone in the house who could destroy evidence, such possibility was of no legal consequence, since police may not create their own exigencies to be used as justification for non-adherence to the traditional warrant requirement. *See id.* at 332, 676 A.2d at 230. In rejecting the Commonwealth's invocation of the independent source doctrine, the Court relied on *Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251 (1993), which departed from prevailing Fourth Amendment jurisprudence to establish, as a general rule, that under Article I, Section 8 of the Pennsylvania Constitution, the exclusionary rule applies to evidence obtained via forcible, warrantless entries, albeit that such entry occurred to secure the premises pending the issuance of a warrant predicated upon independent grounds. *See id.* at 571–72, 637 A.2d at 257. The *Melendez* Court recognized that

*Mason's* substantial emphasis on the importance of privacy in Article I, Section 8 jurisprudence raised the question of whether the decision should be understood as establishing a bright-line rule requiring an absolute exclusion of evidence seized after warrantless police intrusions into a home, or whether exceptions to the warrant requirement such as the independent source rule might validly pertain in some circumstances. *See Melendez,* 544 Pa. at 334, 676 A.2d at 231.

Although the *Melendez* Court resolved this question in favor of maintaining the availability of the independent source exception, it found that the exception should not be deemed applicable on the facts before it, based on the concern that police should not be permitted to first request a warrant, conduct an illegal entry, then evade suppression of the evidence which they would later seize pursuant to the warrant. *See Melendez,* 544 Pa. at 334, 676 A.2d at 231; *see also Mason,* 535 Pa. at 573, 637 A.2d at 257–58 (Cappy, J., concurring). To alleviate such concern, *Melendez* held that " '[A]pplication of the "independent source doctrine" is proper only in the very limited circumstances where the 'independent source' is *truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered.' " Melendez,* 544 Pa. at 334, 676 A.2d at 231 (quoting *Mason,* 535 Pa. at 573, 637 A.2d at 257–58 (Cappy, J., concurring) (emphasis in original)). In Melendez's case, the Court found that there was no source of evidence in question that was truly independent of either the tainted evidence or the detectives who engaged in the misconduct. Further, the Court admonished:

> The Pennsylvania Constitution does not allow police intrusions exemplified by this case and *Mason.* Government agents may not enter private dwellings through the use of battering rams as in *Mason,* or by effecting illegal stops and seizures as in this case, and secure the premises by detaining those who occupy the premises while police wait to learn whether their application for a warrant has been approved. It is difficult to imagine practices more inimical to the

fundamental idea that no person shall be subject to unreasonable searches and seizures.

*Melendez,* 544 Pa. at 334–35, 676 A.2d at 231–32.

In a concurring opinion, Justice Cappy joined the reasoning and holding of the majority, but criticized the Court's prior action in dismissing Appellant's petition for allowance of appeal which also challenged the search of Melendez's premises, characterizing such treatment as unjust and shameful. *See id.* at 335, 676 A.2d at 232.

On remand, the prosecution entered a *nolle prosequi* on Melendez's case, and she was released from custody in June of 1996.

Upon reviewing the *Melendez* decision, Appellant again sought this Court's review, either in its appellate capacity or, alternatively, as a matter arising in its original jurisdiction for purposes of granting habeas corpus relief. Such petition was denied by *per curiam* order.

Subsequently, in a timely petition requesting relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, Appellant complained that his rights of due process and equal protection of law were violated by the disparate treatment that he received on appellate review vis-à-vis that afforded to Melendez. The PCRA court, however, dismissed the petition on the Commonwealth's motion, adopting the reasoning from the Commonwealth's supporting brief.

Appellant then filed an appeal in the Superior Court and a habeas corpus petition in federal court. The district judge, however, dismissed the federal petition without prejudice, to permit the state courts the opportunity to address the issue. In the state appeal proceedings, the Superior Court affirmed the PCRA court's order in a memorandum opinion, indicating that it "recognize[d] the frustration felt as a result of the facial contradiction between appellant's case and that of co-defendant Melendez." It found, however, that no relief was due, as Appellant was improperly attempting to relitigate his search and seizure claim, and was not entitled to "retroactive" application of the *Melendez* decision. In this regard, the Superior

Court relied on its decision in *Commonwealth v. Fiore,* 445 Pa.Super. 401, 665 A.2d 1185 (1995), *cert. granted,* 526 U.S. 1038, 119 S.Ct. 1332, 143 L.Ed.2d 497, *question certified,* 528 U.S. 23, 120 S.Ct. 469, 145 L.Ed.2d 353 (1999), *certified question answered,* 562 Pa. 634, 757 A.2d 842 (2000), *judgment rev'd,* 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) *(per curiam).*

We allowed appeal, and held the matter in abeyance pending the United States Supreme Court's resolution of the federal habeas corpus proceedings in *Fiore,* which occurred in 2001. *See Fiore,* 531 U.S. at 225, 121 S.Ct. at 712.[2] We subsequently remanded, however, for the preparation of a proper PCRA court opinion per *Commonwealth v. Williams,* 557 Pa. 207, 224–25, 732 A.2d 1167, 1176 (1999) (disapproving of the practice of wholesale adoption of a litigant's brief to supply the reasoning for a court's Rule 1925 opinion). In the PCRA court's subsequent opinion, it expressed the view that Appellant was entitled to relief from his conviction and sentence, such as was afforded to Melendez. According to the court,

> The simple truth here is that the search [of Melendez's residence] has already been found unconstitutional by the highest court in the Commonwealth, and there is no longer any question that it was improper. Legal niceties aside, the Defendant is surely entitled to the *benefit* of the Supreme Court's ruling—even if he was not himself entitled to seek it—and the fact he remains imprisoned is fundamentally wrong.

(emphasis in original).

Presently, Appellant maintains that, throughout the course of the criminal trial and direct appeal proceedings, he and Melendez were identically situated, since both had standing to seek, sought, and were denied suppression; both were convicted in the same forum on the same evidence; and both

2. As both parties recognize, the resultant decision of the United States Supreme Court is not dispositive here, since the Court rested its holding on the Commonwealth's failure to establish a basic element of the crime at issue. *See Fiore,* 531 U.S. at 228–29, 121 S.Ct. at 714.

received equivalent treatment in the Superior Court. Accordingly, Appellant asserts that the disparate treatment by this Court of his petition for allowance of appeal constituted an arbitrary act, violative of his constitutional entitlement to fundamental fairness, due process, and equal protection of the law. *See generally Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 841, 83 L.Ed.2d 821 (1985) (observing that equal protection "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable" (citation omitted)); *id.* at 401, 105 S.Ct. at 838–39 (indicating that even discretionary acts of the state must comport with constitutional norms). Appellant highlights that two courts of this Commonwealth have recognized the unfairness visited upon him by his unequal treatment on direct appeal. Although Appellant recognizes the substantial burden that he bears to obtain relief in the post-conviction setting, he notes that this Court and others have found relief available in the interests of justice in analogous circumstances. *See Commonwealth v. Tyson*, 535 Pa. 391, 394–95, 635 A.2d 623, 624–25 (1993); *Walter v. United States*, 969 F.2d 814, 817 (9th Cir.1992) ("When the federal courts have treated differently two identically-situated co-defendants, the way must be open to correct their error."). According to Appellant, retroactivity principles are not controlling, since he is not seeking retrospective application of any new rule of law, particularly since no such new controlling rule was announced in *Melendez*. Rather, his complaint is that the Court did not apply already existing and controlling precedent (*Mason*) to his case while it was on direct appeal, although it applied the same precedent to his identically situated co-defendant. Appellant also contends that the Superior Court's reliance on its rationale in *Fiore* was misplaced, as this Court itself has since discredited such analysis. *See Fiore*, 562 Pa. at 644–46, 757 A.2d at 848–49.

Finally, Appellant recognizes, that, read literally, he would not appear to be entitled to relief under the PCRA, on account of its prejudice component, (which is couched in terms of the reliability of the truth-determining process), *see* 42 Pa.C.S.

§ 9543(a)(2)(i), since his complaint asserts a breakdown in the appellate process, not trial. Appellant, however, invokes decisions in which this Court has reconciled the "sole means" language and substantive limitations of the PCRA with the constitutional prohibition against suspension of the availability of habeas corpus review by channeling the widest category of matters possible into the statutory post-conviction procedure. *See, e.g., Commonwealth v. Chester,* 557 Pa. 358, 375–76, 733 A.2d 1242, 1250–51 (1999); *Commonwealth v. Lantzy,* 558 Pa. 214, 223, 736 A.2d 564, 569–70 (1999).

The Commonwealth, on the other hand, disputes Appellant's contention that he and Melendez were similarly situated. The Commonwealth rests its position in this regard on the fact that, in the Superior Court, Melendez did not independently list the legality of the warrantless entry of the home among her complaints (although the Commonwealth candidly acknowledges that Appellant did). The Commonwealth emphasizes that, in granting Melendez relief, this Court agreed with her primary claim—unique to her and not raised by Appellant—that the detectives improperly stopped and searched her in the driveway behind her house, and that there were no exigencies to excuse the officers' conduct outside the house. Although the Commonwealth recognizes that the *Melendez* Court expressly disapproved the warrantless entry into Melendez's house, the Commonwealth characterizes such discussion as *dictum.* Since the Commonwealth views the *Melendez* case as having been decided on grounds unique to Melendez, it asserts that Appellant cannot credibly maintain that he was denied due process or equal protection where this Court merely exercised its discretionary review prerogative and concluded that the concerns it harbored in Melendez's case simply did not apply to a distinctly situated litigant. Even if, *arguendo,* Appellant and Melendez had been identically situated, the Commonwealth describes Appellant's claim as previously litigated on direct appeal; indicates that Appellant cannot be entitled to retroactive application of *Melendez* since it announced no new rule of law and was not issued during the pendency of his direct appeal; and asserts that Appellant's

claim does not implicate the truth-determining process or otherwise warrant habeas corpus relief.

At the outset, we disagree with the Commonwealth's contention that the holding of *Melendez* is confined to the validity of the stop of Melendez's vehicle, or the consequences of the invalidity of that stop. The Court, in fact, expressly deemed the premises-search question to be before it, *see Melendez*, 544 Pa. at 331, 676 A.2d at 230 ("Next, we address the claim that the search of the premises was illegal."); used the case as a vehicle to clarify the holding of *Mason*, another case involving a premises search, *see id.* at 334, 676 A.2d at 231; and framed its ultimate holding as encompassing its conclusion concerning the invalidity of the warrantless entry of Melendez's premises. *See id.* at 334–35, 676 A.2d at 231–32. To the extent that the Commonwealth seeks to differentiate Melendez's claims from Appellant's on the basis that her arguments focused on the vehicle-stop question, the argument seems to go more to the propriety of granting Melendez relief in the first instance than to Appellant's entitlement to relief on the merits, since the Commonwealth concedes that Appellant properly raised and preserved the premises-search question throughout. For purposes of *Melendez's* holding, we view Melendez and Appellant as identically (or at least as similarly enough) situated.[3]

We also agree with Appellant that *Melendez* announced no new, controlling law. Certainly the decision clarified that *Mason's* broad language did not entirely supplant all exceptions to the warrant requirement. *See Melendez*, 544 Pa. at 334, 676 A.2d at 231. Both Melendez and Appellant, however, would have been entitled to relief under the bright-line interpretation of *Mason* that was rejected by the *Melendez* Court (namely, that all evidence obtained in connection with a warrantless entry is subject to exclusion), and under the narrower view that *Melendez* adopted, which preserved exceptions to

3. Although it appears from the record that Appellant was staying in the house as Melendez's guest, overnight guests are afforded standing under both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 98–100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85 (1990).

the warrant requirement but nevertheless found those exceptions inapplicable under the facts presented. *See Melendez,* 544 Pa. at 334, 676 A.2d at 231.

It is well settled that differential treatment in terms of fact finding is not generally actionable,[4] and there are certainly an unlimited number of circumstances that may, in a given case, validly support differential treatment among co-defendants in their subsequent efforts to obtain relief on appellate review. Here, however, we find insufficient reasons to support the contrary treatment of Appellant and Melendez in the course of this Court's discretionary review and thereafter. *Accord Commonwealth v. Brown,* 494 Pa. 380, 385, 431 A.2d 905, 908 (1981) (" 'Evenhanded decision-making requires that similarly situated individuals on direct appeal be treated the same.' " (citation omitted)), *overruled on other grounds Commonwealth v. Geschwendt,* 500 Pa. 120, 134, 454 A.2d 991, 999 (1982).

It is unclear whether federal equal protection or due process concepts will ultimately be construed by the United States Supreme Court to require consistently equal treatment of co-defendants with respect to purely legal issues on appeal. *See generally Sanders v. Moore,* 156 F.Supp.2d 1301 (M.D.Fla. 2001) (observing that "there are no reported Supreme Court decisions holding that anyone has a constitutional right, through equal protection or otherwise, to consistent decisions from an appellate court").[5] We find, however, that this ques-

---

4. *See, e.g., Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside[;] [w]e have so held with respect to inconsistency between verdicts on separate charges against one defendant, and also with respect to verdicts that treat codefendants in a joint trial inconsistently." (citations omitted)); *Commonwealth v. Travaglia,* 541 Pa. 108, 130, 661 A.2d 352, 363 (1995) (finding a federal court's resolution of a factual dispute involving a co-defendant did not invalidate a post-conviction court's resolution on a nearly identical record).

5. In recognizing "selective application of new rules violates the principle of treating similarly situated defendants the same," *see Griffith v. Kentucky,* 479 U.S. 314, 323, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987), however, the United States Supreme Court appears to be building from the underlying premise that selective application of existing rules violates the same principle. *Accord Myers v. Ylst,* 897 F.2d 417, 421 (9th

tion need not be fully resolved, as we are inclined here to grant relief in favor of Appellant on the underlying issue.

We are aware of, and generally enforce according to its plain terms, the statutory bar against relitigation of claims on collateral review under the PCRA. *See* 42 Pa.C.S. § 9543(a)(2). As Appellant notes, however, by its effort to channel the broadest category of post-conviction claims into the statutorily-prescribed procedures, the Legislature implemented a scheme that must necessarily be deemed to take into account facets of traditional habeas corpus jurisprudence, *see Chester*, 557 Pa. at 375–76, 733 A.2d at 1250–51; *Lantzy*, 558 Pa. at 223, 736 A.2d at 569–70, under which previous litigation does not function as a never-yielding bar to the possibility of collateral relief. *See, e.g., Darr v. Burford*, 339 U.S. 200, 214–15, 70 S.Ct. 587, 596, 94 L.Ed. 761 (1950) ("All authorities agree that *res judicata* does not apply to applications for habeas corpus. The courts must be kept open to guard against injustice through judicial error."), *overruled in part on other grounds, Fay v. Noia*, 372 U.S. 391, 435–36, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963); *accord Duncan v. Kerby*, 115 N.M. 344, 851 P.2d 466, 468–69 (1993), *cited with approval in Commonwealth v. Grant*, 572 Pa. 48, 63–64 & n. 13, 813 A.2d 726, 735–36 & n. 13 (2002). Indeed, in other instances involving unique circumstances embodying manifest error or irregularity in the chain of previous litigation, this Court and others have found that the doctrine need not be regarded as dispositive on collateral review. *See Commonwealth v. Tyson*, 535 Pa. at 394–95, 635 A.2d at 624–25 (granting post-conviction relief to equalize the treatment of similarly situated co-defendants); [6] *accord Walter v. United States*, 969 F.2d at 817

---

Cir.1990) (" 'Although the state court has the right to make a ruling retroactive, prospective, or permit limited retroactivity, once it has established a rule it must apply it with an even hand.' " (citation omitted)).

**6.** We acknowledge that the *Tyson* Court crafted its holding narrowly, tethering it to the Court's notation, in an order denying the petitioner's previous motion to stay effectuation of the judgment of sentence, that such denial was without prejudice to post-conviction review. *See Tyson*, 535 Pa. at 394–95, 635 A.2d at 624–25. The *Tyson* decision does not suggest, however, that there was any form of detrimental reliance

(citing *Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974)).[7]

We hold that *Melendez* establishes Appellant's entitlement to relief on his underlying Article I, Section 8 claim, and such relief is presently available on collateral review in the particularized circumstances presented.

The order of the Superior Court is reversed, Appellant's judgment of sentence is vacated, and the case is remanded for a new trial in accordance with this opinion.

Justice EAKIN did not participate in the decision of this case.

Justice CASTILLE files a dissenting opinion.

Justice CASTILLE dissenting.

(Submitted April 9, 2002)

I respectfully dissent. After outlining the important, difficult, and potentially far-reaching due process/equal protection claim arising from this Court's management of its discretionary review docket which is squarely presented in this Post Conviction Relief Act ("PCRA")[1] appeal, the Majority Opinion inexplicably declines to decide the claim. Instead, the Majority revisits the underlying search and seizure claim which was raised and finally litigated on appellant's direct appeal to the Superior Court, and then summarily resolves the claim in appellant's favor. The Majority recasts the issue presented, despite the fact that appellant insists that he is not attempting to relitigate the search and seizure claim. Instead, appellant makes clear that his is a distinct claim which only matured years after trial when he supposedly was a victim, at the

on the part of the petitioner upon this without-prejudice proviso. The Court's focus, therefore, can be viewed as much as a reflection of its intention to closely constrain exceptions to the previous litigation doctrine as it can be understood to represent material reliance on the without-prejudice proviso as the operative predicate justifying the post-conviction relief afforded.

7. We also take a similar view, accepting Appellant's argument with respect to the PCRA's prejudice formulation. *See supra.*

1. 42 Pa.C.S. § 9541 *et seq.*

hands of this Court, of an "arbitrary, capricious and unequal" discretionary appeal system.

Having recast the claim into one which appellant deliberately does not pursue, the Majority summarily grants collateral relief based upon the companion decision in *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1996)—a decision which did not exist when appellant's discretionary appeal was dismissed as improvidently granted. *See* Majority slip op. at 14 ("*Melendez* establishes Appellant's entitlement to relief"). In so ruling, the Majority apparently assumes that the former members of this Court who voted to dismiss appellant's appeal as improvidently granted before Melendez's allocatur was even granted were incompetent in failing to perceive the supposed "identical" nature of the appeals. The Majority employs its assumption of unexplainable disparate treatment by predecessor Justices as grounds for essentially reinstating appellant's 1994 discretionary appeal *nunc pro tunc* and then affording him the benefit of the retroactively-deemed-controlling *Melendez* decision.

In addition to the fact that the Majority decides an issue other than the one actually posed, the Majority eviscerates salutary provisions in the PCRA concerning cognizability, *see* 42 Pa.C.S. § 9543(a)(2)(i) (constitutional claim may be basis for relief only if violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place") and previous litigation. *See id.* § 9544(a)(2) ("an issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled upon the merits of the issue"). The Majority eviscerates the statute in the absence of any argument that these unambiguous limitations upon redundant PCRA review of appellee's underlying search and seizure claim are unconstitutional. *See Pantuso Motors, Inc. v. Corestates Bank, N.A.,* 568 Pa. 601, 798 A.2d 1277, 1283 (2002) ("absent constitutional infirmity, the courts of this Commonwealth may not refuse to enforce on grounds of public policy that which the legislature has prescribed"). It has been noted by learned authority that:

Much of the confusion surrounding the PCRA is the result of a fundamental misunderstanding of the Act's purpose. It is not a means of re-litigating issues that have already been addressed on direct appeal, or which could have been raised earlier. Nor is it a tool to correct technical or procedural errors that occurred during the conviction process. Its sole purpose is to provide relief to those individuals who did not commit the crimes for which they have been convicted, or who are serving sentences longer than the legal maximum.

Thomas G. Saylor, *Post Conviction Relief in Pennsylvania*, Pa. B.A.Q., Vol. LXIX, No. 1 (January, 1998), at 1. The Majority's approach today will only sow further confusion concerning the proper role of the PCRA. Because I would decide the constitutional question of first impression actually presented, rather than add to the confusion surrounding the PCRA by reaching a different claim, I voice this respectful dissent.

The previous litigation proscription of the PCRA is a statutory mandate which, unless it runs afoul of some constitutional proscription, is entitled to fidelity in enforcement of its plain terms. Collateral attacks upon final state convictions in Pennsylvania involving constitutional claims which are cognizable under the PCRA are governed by the terms of the PCRA and not by judicial whimsy. This Court has explicitly recognized that ours is not the only appropriate voice in determining the availability of relief from an otherwise-final criminal judgment. Thus, we have "acknowledged that the General Assembly is authorized, consistent with the Pennsylvania Constitution, to impose reasonable restrictions on the various forms of post-conviction review." *Commonwealth v. Abdul–Salaam*, 571 Pa. 219, 812 A.2d 497, 501 (2002), *citing Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998). One such reasonable restriction is the PCRA's previous litigation provision, which unambiguously states that claims which have been previously litigated are ineligible for collateral relief. 42 Pa.C.S. 9543(a)(3). Thus, "[a] petitioner is **precluded** from raising a claim on post-conviction review that was previously and finally litigated on direct appeal." *Commonwealth v.*

*Williams,* 557 Pa. 207, 732 A.2d 1167, 1183 (1999) (emphasis supplied); *see also Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242, 1253 (1999) ("Claims that have been finally litigated are **not cognizable** under the PCRA.") (emphasis supplied). The PCRA defines previous litigation in unambiguous terms which, in pertinent part here, unquestionably preclude review of appellant's search and seizure claim, since it was rejected by the Superior Court on his direct appeal: "an issue has been previously litigated if . . . (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue . . . ." Id. § 9544(a)(2).

The previous litigation bar is a sensible one for it promotes finality and respect for judgments, which are important societal interests. *See Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721, 732 (2001); *Peterkin,* 722 A.2d at 643. "Finality is essential to both the retributive and the deterrent functions of criminal law." *Calderon v. Thompson,* 523 U.S. 538, 555, 118 S.Ct. 1489, 1501, 140 L.Ed.2d 728 (1998). It is one thing to offer a second bite at a state criminal judgment in order to allow for litigation of new claims, previously undiscoverable claims, or previously unripe claims (such as the one appellant actually forwards here), but it is another thing entirely to permit repetitive litigation of the same claim. Indeed, there is no practical and principled reason to permit even limited relitigation, for **every** defendant seeking to relitigate a claim will argue, as the Majority does here, that the first appeal was wrongly decided. As Mr. Justice (now Chief Justice) Cappy noted in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 703 (1998), "[t]he requirement that a claim for PCRA relief not be previously litigated would be rendered a nullity if this court could be compelled to revisit every issue decided on direct appeal upon the bald assertion that that decision was erroneous."

Enforcing the terms of the PCRA previous litigation bar provision would visit no injustice upon appellant, for he explicitly does not seek to relitigate his search and seizure claim. Enforcement of the provision would also spare the Court the

necessity of simply assuming that search and seizure claims are cognizable in that form upon PCRA review. Given the manner in which this appeal has been presented, it is perplexing that the Majority reaches out to do this unnecessary violence to the PCRA.

Far from showing trepidation to the PCRA previous litigation provision betrayed by the Majority today, this Court has applied the provision expansively, indeed so expansively that it covers circumstances that arguably are not supported by the plain language of the PCRA. For example, this Court has barred review of collateral claims invoking distinct constitutional rights such as the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, if the event at trial from which the ineffectiveness claim derives was the subject of a previous claim. *E.g., Williams,* 732 A.2d at 1183 ("a petitioner may not obtain relief on collateral review merely by alleging ineffective assistance of counsel and presenting claims that were previously litigated under new theories"). Moreover, this Court has routinely invoked the previous litigation provision bar to deny consideration of claims of constitutional dimension, including claims which—unlike search and seizure claims—actually implicate the truth-determining process and a defendant's factual guilt or innocence. *See, e.g., Commonwealth v. Johnson,* 572 Pa. 283, 815 A.2d 563 (2002); *Commonwealth v. Wharton,* 571 Pa. 85, 811 A.2d 978 (2002); *Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257 (2002). Indeed, true to our duty to enforce constitutional statutes according to their terms, we have gone so far as to apply the provision in instances, like this one, where there is a claim that intervening law suggests that the previously litigated claim would have merit if it were subject to relitigation. *Chester,* 733 A.2d at 1253 & n. 12 (claim involving propriety of specific intent charge for first degree murder based upon accomplice liability). *Accord Commonwealth v. Hardcastle,* 549 Pa. 450, 701 A.2d 541, 548 (1997) (refusing to reconsider equal protection claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), notwithstanding intervening authority:

"if finality means anything it must mean that our decision on the merits in this case ... cannot be affected by decisions in other cases decided three and four years later").

The Majority's view that the previous litigation provision is subject to such selective "general" enforcement that it may be ignored to reach a claim which was not pursued by the PCRA petitioner invites a substitution of an arbitrary judicial will for the even-handedness of legislation. If this sort of *sua sponte* "selective" negation of the legislative provision is acceptable, what has the statutory "doctrine" become and who may know and predict its new contours? The statute no longer means what it literally says by its "plain terms." 578 Pa. at 275, 851 A.2d at 877. But, which other parties or claims will be deemed entitled to the *sua sponte* grace of Pennsylvania's highest court, to have the Court selectively reinvigorate already-failed claims? The case *sub judice* is not a capital case and, in any event, the previous litigation provision has been enforced in the capital arena; thus, today's rule cannot be justified by the Court's indulgence of the felt extra-legal necessities arising in capital cases. *See Commonwealth v. Saranchak*, 570 Pa. 521, 810 A.2d 1197 (2002) (reinstating PCRA petition of capital petitioner despite lack of jurisdiction to do so). It cannot be the mere constitutional nature of the underlying claim, for the "doctrine" has routinely been applied to bar reconsideration of constitutional claims. *E.g., Wharton*, 811 A.2d at 983. Indeed, the doctrine has specifically been applied to search and seizure claims. *E.g., Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 253 (1998). Moreover, if a general exception were to be made for certain constitutional claims, one would expect search and seizure issues to be at the bottom of the list, since they do not involve factual guilt or innocence, rather only police conduct.

The only unique consideration present here is one which weighs heavily in favor of reaching the due process/equal protection argument that is actually forwarded. This consideration is the fact that, unlike in the usual instance, where this Court is called upon to assess the duties and faults in others such as a lower court judge, a defense attorney, or a prosecu-

tor, this case involves a candidly and cogently forwarded claim that **this Court** committed error of constitutional magnitude in its handling of appellant's direct appeal. The claim would require this Court to examine its duty and performance in managing its discretionary review docket. We should be willing to examine that constitutional claim squarely, since it is the only claim that actually exists in this case.

As authority for the notion that we may negate the previous litigation bar provision at will, the Majority cites *Commonwealth v. Tyson*, 535 Pa. 391, 635 A.2d 623 (1993). As the Majority notes, however, *Tyson* is distinguishable because, in denying earlier relief to the appellant there, this Court had noted that the denial was without prejudice to post-conviction relief. The *Tyson* Court specifically emphasized the appellant's reliance upon the earlier "without prejudice" notation in determining that she was entitled to PCRA relief notwithstanding the previous litigation of the claim:

> [O]ur May 6, 1988 Order, which was entered during the time that appellant was seeking reconsideration, clearly indicated that her right to petition for collateral relief was not thereby being jeopardized.
>
> Based upon the circumstances presented here, we conclude that while the issues presented here were, indeed, previously raised and decided in appellant's direct appeal and thus, under the PCRA were finally litigated, fairness dictates that we permit collateral relief. **Appellant reasonably concluded from the wording of the May 6, 1988 order that it was this Court's intention to permit her to seek collateral relief and thereby have the benefit of our then pending ... decision.** Under the circumstances presented here it would be manifestly unjust for this Court to affirm the Superior Court's decision **especially given the fact that it was our own order that no doubt misled appellant.**

*Id.* at 624 (emphases supplied). It was that unique situation which led the Court to conclude that "principles of fairness" and the "interests of justice" required an award of relief. No

such reliance has been invited here by virtue of our improvident grant dismissal of appellant's appeal.

*Tyson* is also distinguishable from the case *sub judice* because it involved the availability of a defense at trial—expert evidence concerning the so-called "battered woman syndrome"—and thus inured to appellant's actual guilt or innocence. Finally, given this Court's decisions in the previous litigation arena since *Tyson*, as well as the fact that the *Tyson* Court never attempted to explain under what authority the statute could be negated on "fairness" grounds, it is unwise to read *Tyson* in the Majority's expansive fashion-*i.e.*, as if it permits the Court to ignore the previous litigation bar provision whenever a Majority is of a mind to do so. *Tyson*, which went to such extraordinary and near-apologetic lengths to tie itself to its unique facts, should be confined to those facts.

Appellant presents a cogent constitutional claim of first impression. It is an issue of importance and capable of repetition. I would decide that claim. Because the Majority does not, and erroneously awards relief upon an unavailable claim which is not before us, I respectfully dissent.[2]

**2.** Given my view in text, I would not reach the merits of the underlying search and seizure claim. However, I note my concern with the Majority's easy acceptance of the notion that the situations of Melendez and appellant respecting the search of Melendez's home was "identical" and should have been apparent as such to those of our predecessor brethren who voted to dismiss appellant's appeal and later to sustain Melendez's. First, it is not self-evident that appellant and Melendez were "identically situated." The warrant-based search which resulted in the actual seizure of the evidence which formed the basis for appellant's prosecution was of **Melendez's** home. Appellant was present at the time of the search and, having been charged with possessing the contraband, he had automatic **standing** to challenge that seizure. *See Commonwealth v. Peterson*, 535 Pa. 492, 636 A.2d 615, 617 (1993), *citing Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983). In forwarding his suppression challenge, however, appellant had the affirmative preliminary burden at the suppression hearing to show that the entry into Melendez's residence and the ensuing search violated a reasonable expectation of privacy which was personal to **him**. As this Court explicitly noted in *Peterson*:

> [H]aving had his standing acknowledged, appellant is then required to establish that the challenge he has without question legitimately raised is itself legitimate. In order to do so, he must demonstrate

that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth, Article I, Section 8, to be "secure ... against unreasonable searches and seizures."

*Id.* at 617–18.

Notably, in forwarding his present assertion that he was "identically" situated to Melendez respecting the search of her home, appellant states that he had a reasonable expectation of privacy because he "resided" there. For proof of this crucial link in proving "identicality," however, appellant relies not upon his own proof at the suppression hearing, but upon the Commonwealth's **later** evidence at trial, *see* Brief for Appellant, 12 n. 8; a supposed concession by the Commonwealth at the collateral review stage (long after this Court supposedly violated his right to due process and equal protection by failing to recognize identicality); *id.* at 23, and a detective's hearsay testimony at the suppression hearing that an informant told him that appellant lived there. *Id.* On such a record, it is not so obvious that our predecessor brethren who supposedly cast inexplicably contrary votes were so incompetent as appellant and the Majority assume.

My second concern with the merits has to do with the Majority's equally rash acceptance of the notions that (1) *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251 (1993), which involved a warrantless police entry via battering ram, alone dictated appellant's entitlement to relief before the *Melendez* case was even decided, and (2) *Melendez's* adoption of a unique view of the independent source rule made no new law. In my view, a fair and careful reading of those two rather unfocused opinions supports neither notion. If we are about reinterpreting the conduct of the Court in those years, perhaps those opinions should be fair game for scrutiny as well.