**[J-78-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**JUSTICES DONOHUE, DOUGHERTY, WECHT, AND MUNDY**
**JUDGES KING, KUNSELMAN, AND NICHOLS[1]**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 768 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated June 29, |
| | : | 2018 in the Court of Common Pleas, |
| | : | Bradford County, Criminal Division at |
| v. | : | No. CP-08-CR-0000309-1995. |
| | : | |
| | : | SUBMITTED:  July 19, 2019 |
| JOHN JOSEPH KOEHLER, JR., | : | |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED:  April 24, 2020**

On December 7, 2015, John Koehler filed his second petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA").[2]  Koehler seeks, *inter alia,* the reinstatement of his appellate rights *nunc pro tunc* in order to appeal anew to this Court from the denial of his first PCRA petition.  The PCRA court dismissed the petition, holding that it was without authority to grant relief.  We conclude that the PCRA court erred as a matter of law, as we hold that a PCRA court possesses the authority to grant the form of relief that Koehler seeks in the event that the petitioner establishes the merits of his claim.  Accordingly, we reverse the order of the PCRA court, and we remand for further proceedings.

---

[1]     A special complement of the Supreme Court of Pennsylvania has been assembled to address the issues presented in this case pursuant to Pa.R.J.A. 701(C).

[2]     42 Pa.C.S. §§ 9541-46.

In 1996, a jury found Koehler guilty of two counts of first-degree murder and related offenses arising from the killing of his girlfriend and her nine-year-old son, and sentenced Koehler to death. On direct appeal, this Court affirmed. *Commonwealth v. Koehler*, 737 A.2d 225 (Pa. 1999) ("*Koehler I*"). Koehler's judgment of sentence became final after the Supreme Court of the United States denied *certiorari* review. *See Koehler v. Pennsylvania*, 531 U.S. 829 (2000).

In 2001, Koehler filed a timely PCRA petition. Therein, Koehler included a claim for relief from his death sentence due to ineffectiveness of counsel during the penalty phase. Koehler alleged that counsel failed to investigate and present mitigation evidence that, as a child, Koehler had been a witness to and a victim of domestic violence. The PCRA court denied relief following a hearing, and Koehler appealed. This Court again affirmed. *Commonwealth v. Koehler*, 36 A.3d 121 (Pa. 2012) ("*Koehler II*"). Justice Baer authored the opinion, which was joined by former Chief Justice Castille and Justices Eakin, Todd, McCaffery, and Orie Melvin. Justice (now Chief Justice) Saylor filed a concurring opinion. With respect to Koehler's mitigation claim, the Court held that the mitigation evidence Koehler presented at the PCRA hearing "pale[d] in comparison with the aggravating circumstances found by the jury" at trial. *Id*. at 151. Accordingly, the Court found no prejudice resulting from the claim of counsel ineffectiveness.

On December 7, 2015, Koehler filed a second PCRA petition, this time asserting that his due process rights had been violated during his 2012 appeal in *Koehler II*. Koehler premised this assertion upon the involvement of Justice Eakin in a well-publicized email scandal that included the exchange of religiously, racially, and sexually offensive emails. *See Commonwealth v. Taylor*, 218 A.3d 1275 (Pa. 2019); *Commonwealth v. Blakeney*, 193 A.3d 350 (Pa. 2018); *Commonwealth v. Robinson*, 204 A.3d 326 (Pa. 2018).

On October 8, 2015, the Philadelphia Inquirer reported that media outlets had come into possession of a number of emails exchanged with Justice Eakin through a private email account within a network of law-enforcement officials, prosecutors, and judges.  The Inquirer described several of the emails, including the following:

> [A] joke about a woman who complains to her doctor that her husband "beats me to a pulp" when he comes home drunk. The doctor advises her to swish sweet tea in her mouth and not to swallow until her husband is asleep. The punchline from the doctor: "You see how much keeping your mouth shut helps?"[3]

Viewing this email as suggesting a disregard for victims of domestic violence, Koehler alleged that Justice Eakin's participation in *Koehler II* raised a risk of actual judicial bias as well as the appearance of bias.

A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the judgment becomes final.  42 Pa.C.S. § 9545(b)(1).[4]  A

---

[3]     William Bender, *A Supreme Court Justice's Indecent Inbox*, The Philadelphia Inquirer (Oct. 8, 2015), https://www.inquirer.com/philly/news/20151008_A_Supreme_Court_justice_s_indecent_inbox.html

[4]     At the time Koehler filed his second PCRA petition, Section 9545(b) provided as follows:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania

judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3).

Recognizing that his second PCRA petition was facially untimely, Koehler asserted that he met the timeliness exceptions for governmental interference and newly discovered facts. *See* 42 Pa.C.S. § 9545(b)(1)(i), (ii). With respect to the governmental interference exception, *id.* at § 9545(b)(1)(i), Koehler argued that government officials had concealed the email scandal. As to the newly discovered facts exception, *id.* at § 9545(b)(1)(ii), Koehler argued that he first learned of Justice Eakin's involvement in the email scandal when media outlets began to report it.

Recognizing that information continued to develop with regard to the scope of Justice Eakin's role in the email scandal and the content of the emails, Koehler asserted that, in an abundance of caution, he filed his petition within sixty days of the October 8, 2015 publication of the Philadelphia Inquirer news article summarizing the contents of some of the emails. This article alerted Koehler to the facts that formed the basis of his claims, and Koehler asserted that he could not have discovered these facts any earlier with the exercise of due diligence.

On the merits, Koehler averred that his right to due process was violated by Justice Eakin's involvement in *Koehler II*, which created an unacceptable risk of actual bias[5] as

---

after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

[5]    In *Tumey v. Ohio*, 273 U.S. 510, 532 (1927), the Supreme Court of the United States rejected the argument that the Due Process Clause only protects against actual

well as the appearance of impropriety, and compromised the integrity, fairness, and impartiality of this Court's review of his appeal. Reviewing the evidence presented at the hearing on his first PCRA petition, Koehler highlighted descriptions of the physical abuse suffered by Koehler, his mother, and his siblings, at the hands of his abusive and alcoholic father, and the effect that such abuse had upon Koehler's development. Premised upon the domestic violence "joke" included in Justice Eakin's emails, Koehler asserted that his claim about counsel's failure to develop and present mitigation evidence of Koehler's family dysfunction and abuse could not have been reviewed fairly by Justice Eakin.

Koehler also suggested that the sheer volume of communications between sitting Justices of this Court and the Commonwealth's prosecutors created the appearance of impropriety. Koehler believed that both the *ex parte* nature of the communications with prosecutors and the content of the emails as described in the media "impugn the legitimacy of the judicial process" provided by this Court in *Koehler II*. PCRA Petition at 19 (citing *Commonwealth v. Basemore*, 744 A.2d 717, 733 (Pa. 2000)). According to Koehler, this judicial bias amounted to a structural defect in *Koehler II* that rendered the

judicial bias, and held that disqualification is constitutionally mandated whenever the circumstances, viewed objectively, "would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused." *See also Caperton v. A.T. Massey Coal Co.*, Inc., 556 U.S. 868, 884 (2009) (holding that the *Tumey* test was met because the circumstances of a contribution to a judge's election effort created a "serious risk of actual bias," and, therefore, due process was violated).

As the dissent elucidates, this standard is not a subjective one, asking whether the jurist harbors actual, subjective bias. *See* Concurring and Dissenting Op. at 18-19, 20 n.7 (citing *Caperton*, 556 U.S. at 872). Rather, the question is an objective one, asking whether the average judge was "likely" to be neutral, "or whether there is an unconstitutional 'potential' for bias.: *Id.* (citing *Williams*, 136 S.Ct. at 1905).

Of course, the substantive standards by which a PCRA petitioner must abide to establish a claim of judicial bias go to the merits of the claim, and are beyond the scope of this appeal.

proceedings fundamentally unfair and unconstitutional. *See Johnson v. United States*, 520 U.S. 461, 468-69 (1997) (recognizing that the participation of a partial judge is a structural error).

Koehler contended that he established violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as various provisions of the Pennsylvania Constitution. In particular, Koehler relied upon his state constitutional right to life and liberty (PA. CONST. art. I, § 1); his right to trial by jury (PA. CONST. art. I, § 6); his right of access to open courts (PA. CONST. art. I, § 11); his right to due process and to the effective assistance of counsel (PA. CONST. art. I, § 9); his right not to be subject to cruel punishment (PA. CONST. art. I, § 9); and his right to *habeas corpus* (PA. CONST. art. I, § 14). To remedy this deprivation, Koehler sought discovery, leave to amend the petition as needed, an evidentiary hearing, and a Commonwealth response, and he further requested that his "convictions and death sentence be vacated, and a new trial and/or sentencing be ordered, post-conviction proceedings reopened, or such further relief as [the PCRA court] deems appropriate." PCRA Petition, 12/7/2015, at 21.

In November 2016, Koehler sought discovery, and later sought leave to amend his petition. Believing that Koehler's petition asked the PCRA court to rule either that Justice Eakin engaged in judicial misconduct or that Justice Eakin should have recused from consideration of *Koehler II*, the PCRA court held that the petition was "beyond the original jurisdiction and authority of this court." PCRA Ct. Order, 6/26/2016. Accordingly, on June 26, 2016, the PCRA court transferred the case to this Court. *See* 42 Pa.C.S. § 5103(a) (providing for the transfer of erroneously filed matters).

In response to this Court's subsequent request for briefing on the question of the Court's jurisdiction, Koehler asserted that, despite the PCRA court's transfer, this Court lacked jurisdiction and that the Court should remand the matter back to the PCRA court.

The Commonwealth acknowledged that it would be prudent for this Court to remand the case back to the PCRA court.

On November 2, 2016, this Court accordingly remanded the case to the PCRA court for disposition of Koehler's PCRA petition, citing to the original jurisdiction of the PCRA courts, 42 Pa.C.S. § 9545(a) ("Original jurisdiction over a proceeding under this subchapter shall be in the court of common pleas."). *Commonwealth v. Koehler*, 160 A.3d 782 (Pa. 2016) (*per curiam*).

Upon remand, Koehler again sought discovery and leave to amend the PCRA petition. On February 23, 2017, the PCRA court provided notice of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 909(B). Pointing to the fact that Koehler's sole claim was that his due process and other constitutional rights were violated during this Court's consideration of *Koehler II*, the PCRA court opined that a PCRA appeal is not part of the "truth determining process" for which PCRA relief is available. *See* 42 Pa.C.S. § 9543(a)(2)(i).

In response, Koehler again argued that the participation of Justice Eakin in *Koehler II* resulted in state and federal constitutional violations that demanded the remedy of a new appeal from the denial of his first PCRA petition. Koehler maintained that his claims were cognizable under the PCRA because he sought relief connected to, and derived from, his underlying criminal conviction and death sentence.

In July 2017, the PCRA court entered an order denying Koehler *habeas corpus* relief and holding that Koehler's "claims under the [PCRA] remain[ed]" under review. PCRA Ct. Order, 7/12/2017. The PCRA court reasoned that, by grounding his due process claim on Justice Eakin's purported disregard for domestic violence victims, Koehler challenged only this Court's post-conviction review of his sentence, not his conviction.

On January 3, 2018, the PCRA court entered another notice of intent to dismiss the PCRA petition without a hearing. This time, the PCRA court recognized that this Court had disagreed with it about its jurisdiction over the petition, but opined that it nevertheless lacked the authority to reinstate Koehler's PCRA appellate rights *nunc pro tunc*. The PCRA court perceived a distinction between its jurisdiction, which the PCRA court believed was resolved by this Court's prior remand order, and its "power to grant the requested relief," which the PCRA court believed remained unresolved. PCRA Ct. Order, 1/3/2018 at ¶ 6 (citing *Alpha Tau Omega Fraternity v. Univ. of Pa.*, 464 A.2d 1349, 1353 (Pa. Super. 1983)). Believing that only this Court can "pass judgment on all Pennsylvania courts and the officers of the judicial branch," the PCRA court held that it was "powerless to conclude that Justice Eakin demonstrated bias or that he violated the Code of Judicial Conduct, or that he should have recused himself from consideration of [Koehler's] appeal." *Id.* at ¶7, 8 (citing *Reilly by Reilly v. Southeastern Pa. Transp. Auth.*, 489 A.2d 1291 (Pa. 1985)). The court noted that Koehler was not without a remedy because, according to the PCRA court, Koehler could seek *habeas corpus* relief within the original jurisdiction of this Court.

Koehler again responded, asserting that the PCRA court had the power and the duty to grant relief, including reinstatement of his PCRA appellate rights *nunc pro tunc*. Koehler reiterated that he was not asking the PCRA court to issue a disciplinary decision regarding the conduct of Justice Eakin, nor was he asking the PCRA court to pass on the merits of any prior appellate decision in this case. Koehler also advocated against dismissal as contrary to the prior remand order from this Court, which Koehler viewed as a rejection of the PCRA court's belief that it lacked "jurisdiction and authority" to resolve this case. Rather, according to Koehler, this Court's remand order foreclosed the PCRA court from again holding that it lacked authority to grant relief.

On July 4, 2018, the PCRA court dismissed the petition. In August 2018, after Koehler filed his notice of appeal, the PCRA court directed Koehler to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On September 4, 2018, Koehler complied, raising six issues. In particular, Koehler asserted that the PCRA court erred in the following respects: First, in failing to comply with this Court's prior remand order by concluding that it lacked the authority to grant the requested relief, and dismissing the petition, Rule 1925(b) Statement at 1; second, in dismissing his claim that judicial bias violated his federal and state constitutional rights, *id.*; third, in concluding "that it lacked authority to grant each form of relief Koehler seeks," *id.* at 2; fourth, in dismissing the PCRA petition "without ruling on Koehler's requests for discovery, to amend, and for an evidentiary hearing to resolve any disputed facts," *id.*; fifth, in denying relief to the extent that Koehler sought *habeas corpus* relief in the alternative to PCRA relief, *id.*; and, sixth, in construing Koehler's petition as seeking "only relief that ultimately could result in relief from his death sentence, as opposed to relief that included reopening of his post-conviction proceedings to challenge his convictions and death sentence." *Id.*

In a Rule 1925(a) opinion filed on November 6, 2018, the PCRA court explained its ruling. Preliminarily, the court conceded that, contrary to its initial assessment of this case, it had original jurisdiction over the petition pursuant to 42 Pa.C.S. § 9545(a). Notwithstanding this error, the PCRA court articulated its continued belief that it "lacked the power to grant the relief sought by" Koehler. PCRA Ct. Op., 11/6/2018, at 1.

Reviewing Koehler's Rule 1925(b) statement of errors complained of on appeal, the PCRA court faulted Koehler for merely asserting that the PCRA court's ruling was in error without identifying why the ruling was erroneous. *See, e.g., Commonwealth v. Dowling*, 778 A.2d 683, 687 (Pa. Super. 2001) (holding that a Rule 1925(b) statement

that is too vague to allow the lower court to identify the issues raised on appeal is "the functional equivalent of no Concise Statement at all."); *Baum v. Baum*, 576 A.2d 1104, 1104 n.1 (Pa. Super. 1990) (holding that a Rule 1925(b) statement that the trial court's decision was "contrary to . . . the law" was not sufficiently specific to preserve a claim of error).

The only claim of error that the PCRA court perceived as offering any specificity was Koehler's sixth. Linking Justice Eakin's alleged derision for victims of domestic violence to the ineffective assistance of counsel claim in *Koehler II* that turned on trial counsel's failure to present mitigation evidence of domestic abuse, the PCRA court surmised that Koehler sought only to attack his death penalty, not his conviction, based upon Justice Eakin's involvement in *Koehler II*.

On appeal from the dismissal of Koehler's PCRA petition, our review is limited to examining whether the trial court's determination is supported by the evidence of record and free of legal error. *Commonwealth v. Ali*, 86 A.3d 173, 177 (Pa. 2014). When an issue presents a question of law, our review is *de novo*, and our scope of review is plenary. *Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011).[6]

Koehler makes several arguments to this Court. First, Koehler argues that the PCRA court failed to comply with this Court's prior remand order when it again held that it lacked the power to grant the relief Koehler requested. Koehler believes that our remand order implicitly rejected the PCRA court's view that it lacked authority to dispose of the PCRA petition, and precluded the PCRA court from later dismissing the petition based upon its perceived lack of "power." PCRA Ct. Op., 11/6/2018, at 1. Second, turning to whether a PCRA court has the authority to reinstate a petitioner's appellate rights *nunc*

---

[6] This Court has jurisdiction pursuant to 42 Pa.C.S. § 9546(d).

*pro tunc*, Koehler asserts that *nunc pro tunc* relief is routinely available as a matter of course to remedy constitutional defects in a prior proceeding.

Next, Koehler argues that the PCRA court misconstrued the nature of his claims when it held that Koehler ultimately sought relief only from his sentence, rather than from his conviction. Asserting that his 2001 PCRA petition attacked his underlying conviction and sentence, and that this Court's disposition of that petition in *Koehler II* was tainted by Justice Eakin's alleged bias, Koehler requests a new appeal from the denial of relief on his first PCRA petition that encompasses review of every issue that he raised on appeal.

Fourth, Koehler disputes the PCRA court's suggestion that his Rule 1925(b) statement of errors complained of on appeal was vague. In his last argument, Koehler faults the PCRA court for declining to address his motions for discovery, for leave to amend the PCRA petition, and for an evidentiary hearing to resolve disputed facts.

In its response, the Commonwealth focuses exclusively upon whether the PCRA court has the authority to order this Court to reconsider our prior disposition of Koehler's first PCRA appeal. To this end, the Commonwealth makes three arguments: the PCRA court is subordinate to this Court, *In re Bruno*, 101 A.3d 635, 678-83 (Pa. 2014); *Koehler II* is binding precedent and law of the case, *Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996); and this Court is the final arbiter of whether a jurist has engaged in misconduct. From these three arguments, the Commonwealth concludes that the PCRA court's determination that it lacked the authority to direct this Court to reconsider *Koehler II* was logically sound and legally correct.

If, however, this Court believes that the PCRA court was incorrect in its assessment, the Commonwealth requests a remand back to the PCRA court with instructions to proceed in the normal course of PCRA proceedings, including: the filing of the Commonwealth's answer after Koehler amends his petition; the litigation of

outstanding discovery issues; an evidentiary hearing if the petition is deemed to raise a genuine issue of material fact; and, ultimately, a determination on the merits. Having considered the parties' arguments, we address each of the issues Koehler presents, reorganized for ease of discussion.

## I. Scope of Remand

We resolve first the effect of this Court's November 2, 2016 remand order on this case. When it transferred the case to this Court, the PCRA court opined that the petition was beyond its jurisdiction and authority. This Court disagreed. We first requested briefing from the parties on the question of this Court's jurisdiction, and we later remanded the case back to the PCRA court with a citation to 42 Pa.C.S. § 9545(a), which establishes original jurisdiction over PCRA petitions in the court of common pleas. While confirming jurisdiction in the PCRA court, we made no mention to the parties or to the PCRA court of any view of the extent of the PCRA court's remedial authority in this matter. These circumstances reveal plainly that our prior remand order was premised upon the original jurisdiction of the PCRA court over PCRA petitions. Our remand order did not resolve whether the PCRA court is empowered to afford the requested relief.

Koehler blends the concepts of the jurisdiction to hear a case and the authority to grant a particular type of relief, presuming that our jurisdiction-based remand foreclosed the PCRA court's ability to consider whether it could afford the relief requested. But resolving whether a court has jurisdiction over a certain type of claim does not resolve whether the court has the ability to grant the relief requested. *See, e.g., Alpha Tau Omega Fraternity*, 464 A.2d at 1353 (recognizing the distinction between the jurisdiction of the court to act and "whether it is able to grant the requested relief once it assumes jurisdiction"). Our remand order signifies only that we do not exercise original jurisdiction

over PCRA proceedings, the resolution of which belongs in the PCRA court in the first instance.

## II. Sufficiency of the Rule 1925(b) Statement

We also dispense with the PCRA court's conclusion that Koehler was insufficiently specific in his Rule 1925(b) statement of errors complained of on appeal. Rule 1925(b) requires a litigant to set forth each error that the litigant intends to assert with sufficient detail to identify the issue to be raised. Pa.R.A.P. 1925(b)(4)(ii). As the PCRA court observed, its notice of intent to dismiss was premised upon a holding that "was narrow and precise: that a common pleas judge lacks the authority to pass judgment on the conduct of a [J]ustice of the Pennsylvania Supreme Court, or to grant relief grounded on a claim that a Supreme Court [J]ustice erred." PCRA Ct. Op., 11/6/2018, at 4. In his Rule 1925(b) statement, Koehler identified the PCRA court's ruling that it lacked authority to resolve his constitutional claims; the PCRA court's purported failure to abide by this Court's prior remand order; the PCRA court's failure to resolve Koehler's outstanding motions; the PCRA court's belief that it lacked the authority to grant each form of relief Koehler sought; and Koehler's view that the PCRA court misconstrued his claim as pertaining only to his sentence. By identifying the errors within this narrow and precise holding that Koehler intended to challenge on appeal, Koehler complied with his obligations under Rule 1925(b). We perceive no vagueness in Koehler's identification of the challenged rulings now involved in this appeal. *See, e.g., Baum*, 576 A.2d at 1104 (finding sufficient specificity in the issue of "whether the evidence presented is sufficient to sustain the finding of civil contempt?").

## III. PCRA Court's Authority to Provide Relief

Turning to the question at the heart of this case, we now consider whether the PCRA vests PCRA courts with the authority to remedy appellate-level constitutional

violations in the form of a new appeal to the appellate court, if warranted by the factual development of the case.[7]

Our legislature has determined that the PCRA provides the *sole* means of obtaining collateral relief in Pennsylvania, encompassing "all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including *habeas corpus* and *coram nobis*." 42 Pa.C.S. § 9542; *Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999) ("By its own language, and by judicial decisions interpreting such language, the PCRA provides the sole means for obtaining state collateral relief."). We therefore construe the PCRA and its eligibility requirements broadly, inasmuch as narrowly confining the PCRA to the enumerated areas of review would undermine the legislative intent that the PCRA is the *sole* means of obtaining collateral relief. *Commonwealth v. Hackett*, 956 A.2d 978, 986 (Pa. 2008); *Commonwealth v. Judge*, 916 A.2d 511, 520 (Pa. 2007).

As we observed in our 2016 remand order, the courts of common pleas, serving as PCRA courts, are the repositories for petitions filed pursuant to the PCRA. 42 Pa.C.S. § 9545(a). The PCRA provides the procedural framework for vindicating a convicted criminal defendant's rights in limited circumstances. To be eligible for relief under the PCRA, a petitioner must establish, *inter alia*, that the conviction or sentence resulted from one of several enumerated bases for relief. 42 Pa.C.S. § 9543(a)(2). One of these requires the petitioner to establish that the conviction or sentence resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-

---

[7] The question is not, as the dissent characterizes it, whether a lower court can "order" a higher court to act. Concurring and Dissenting Op. at 6. Rather, the question is whether a PCRA court, vested with jurisdiction over a cognizable claim, has the authority to grant a well-established form of relief to remedy a constitutional deprivation that has been proven on the merits.

determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* § 9543(a)(2)(i).

As this author recently observed in the Opinion in Support of Reversal ("OISR") in *Taylor*, "[i]f an error of constitutional magnitude occurs during the appellate process, the PCRA is the sole means of collaterally attacking the final judgment on that basis." *Taylor*, 218 A.3d at 1280 (OISR). Contrary to the PCRA court's belief, there is no suggestion in either the text of the PCRA nor in this Court's precedent "that alleged errors occurring in the appellate process are immune from collateral attack, or that only an appellate court can redress appellate errors." *Id.*

There is nothing novel in recognizing that constitutional claims relating to the appellate process are cognizable under the PCRA. In *Commonwealth v. Lantzy*, 736 A.2d 564, 569-70 (Pa. 1999), for example, this Court held that post-conviction claims of appellate counsel ineffectiveness related to counsel's failure to perfect a direct appeal were cognizable under the PCRA, and, indeed, "the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal." *Id.* at 569-70. It is axiomatic that, if a claim is cognizable, a PCRA court is empowered to remedy it. In *Commonwealth v. Hall*, 771 A.2d 1232, 1235-36 (Pa. 2001), the question was whether the request for a direct appeal *nunc pro tunc,* premised upon counsel's alleged ineffectiveness in failing to appeal, is a claim that is cognizable under the PCRA. We concluded that "[t]he answer unquestionably is yes." *Id.* at 1235.

We have likewise held that claims premised upon the ineffective assistance of PCRA counsel are cognizable under the PCRA. In *Commonwealth v. Robinson*, 139 A.3d 178, 181-87 (Pa. 2016), the post-conviction petitioner filed an untimely PCRA petition alleging that counsel who represented him during the litigation of his first PCRA

petition was ineffective, and asserting that the right to post-conviction counsel encompasses the right to effective post-conviction counsel. In resolving this appeal, this Court discussed the means by which a PCRA petitioner may raise a timely claim premised upon the ineffective assistance of prior PCRA counsel, before holding that the petitioner's claim was not timely. Although the petitioner in *Robinson* was not entitled to relief, we recognized the cognizability of claims challenging the effectiveness of PCRA counsel and the availability of relief through the PCRA to remedy deprivations occurring in prior proceedings. *See also Commonwealth v. Liebel,* 825 A.2d 630 (Pa. 2003) (holding that a claim challenging counsel's effectiveness on direct appeal for failing to file a petition for allowance of appeal is cognizable under the PCRA).

Similarly, in *Commonwealth v. Cruz*, 851 A.2d 870, 875 (Pa. 2004), we held that due process entitled a post-conviction petitioner to relief on the same grounds for which a co-defendant was granted relief. The petitioner's co-defendant obtained relief in this Court from her conviction and sentence premised upon an illegal search. *See Commonwealth v. Melendez*, 676 A.2d 226 (Pa. 1996). The petitioner had filed a petition for allowance of appeal to challenge the same search. Although this Court initially granted review, we later dismissed the appeal as having been improvidently granted. When we later provided relief to the petitioner's co-defendant for the same search that the petitioner had challenged, the petitioner filed a PCRA petition raising a due process claim premised upon the disparate treatment afforded to the petitioner and his co-defendant by this Court. The PCRA court denied relief, and this Court reversed. We agreed with the petitioner that there were "insufficient reasons to support the contrary treatment of [Cruz] and Melendez in the course of this Court's discretionary review and thereafter." *Cruz*, 851 A.2d at 877. *See also id.* at 881 (Castille, J., dissenting) (recognizing that "this case involves a candidly and cogently forwarded claim that this Court committed error of

constitutional magnitude in its handling of appellant's direct appeal" (emphasis omitted)). *Cruz* confirmed that the PCRA provides the vehicle to remedy errors of constitutional magnitude occurring in a prior proceeding in this Court.

A claim asserting alleged judicial bias in an appellate court is no different from claims that we already have held fall within the ambit of the PCRA. An issue challenging the impartiality of an appellate judge, like an issue challenging the effectiveness of appellate counsel, constitutionally relates directly to the validity of the decision upholding the underlying conviction and sentence. It is an attack upon the truth-determining process, a process that logically includes collateral attacks on the judgment of sentence. *See, e.g., Commonwealth v. Burkett*, 5 A.3d 1260, 1275 (Pa. Super. 2010) ("The PCRA process, although not directly related to an adjudication of guilt, is part of the truth-determining process; otherwise, claims of PCRA counsel ineffectiveness would not be cognizable under the PCRA."). "Due process demands the absence of judicial bias." *Taylor*, 218 A.3d at 1280 (OISR). And a litigant's due process rights are violated if a biased appellate judge decides the fate of the litigant's appeal. *Id.*; *see also Williams v. Pennsylvania*, 136 S.Ct. 1899, 1903 (2016). Consequently, a due process challenge to the impartiality of an appellate jurist is cognizable under Section 9543(a)(2)(i) of the PCRA.[8]

---

[8]   Contemplating the award of a *nunc pro tunc* appeal to remedy a constitutional deprivation occurring in a prior appeal is not, as the dissent characterizes it, meddling in the administrative and supervisory functions of this Court. Concurring and Dissenting Op. at 1, 29. It is, rather, a well-established form of relief by which a lower court corrects an error occurring in the prior appeal.

The arguments that a claim for relief premised upon the conduct of a jurist in a prior appeal may subject former or sitting jurists to *post-hoc* accusations of wrongdoing or unwarranted ridicule, or somehow implicates consideration of the Code of Judicial Conduct, Concurring and Dissenting Op. at 1, are red herrings, straw men erected to distract from the straightforward question in this case: whether the reinstatement of appellate rights *nunc pro tunc* is an appropriate remedy to correct a constitutional deprivation that occurred in a prior appeal. The collateral consequences of adjudicating this claim are irrelevant.

Nor is it a novel development to seek the reinstatement of one's appellate rights *nunc pro tunc*. Rather, if the petition is timely, *nunc pro tunc* relief is a deeply established means of remedying a breakdown in the prior process caused by an error of constitutional magnitude. An award of *nunc pro tunc* relief is intended to put the petitioner in the same position he or she was in just prior to the alleged constitutional deprivation. *See Commonwealth v. Stock*, 679 A.2d 760, 764 (Pa.1996) ("the appeal *nunc pro tunc* is intended to remedy certain extraordinary situations wherein the right of appeal was denied"); BLACK'S LAW DICTIONARY (11th ed. 2019) ("*nunc pro tunc*" is Latin for "now for then"). For instance, a *nunc pro tunc* appeal unquestionably is available to remedy the deprivation of the right to effective assistance of appellate counsel. In *Commonwealth v. Walter*, 119 A.3d 255 (Pa. 2015), a PCRA petitioner sought and obtained reinstatement of her right to file a *nunc pro tunc* direct appeal to this Court. The petitioner appealed, and this Court resolved her appeal. We observed that, if there is a timely PCRA petition vesting the PCRA court with jurisdiction, then the PCRA court may reinstate the petitioner's direct appeal rights. *Id.* at 260 n.5. *See also Commonwealth v. Hall*, 771 A.2d 1232, 1233 (Pa. 2001) ("The PCRA was available to appellee and it is the exclusive vehicle for claims, such as the *nunc pro tunc* appeal claim he raised, that are cognizable under the PCRA.").

Reinstatement of appellate rights *nunc pro tunc* will also remedy the deprivation of effective PCRA counsel. *Commonwealth v. Bennet*, 930 A.2d 1264, 1273 (Pa. 2007) (vacating and remanding for consideration of whether the petitioner was entitled to the reinstatement of his PCRA appeal rights *nunc pro tunc* in a second PCRA petition when his original PCRA appeal was dismissed because of PCRA counsel's failure to file a brief, and reasoning that "due process requires that the post conviction process be fundamentally fair"); *Commonwealth v. Robinson*, 837 A.2d 1157, 1160-61 (Pa. 2003);

*see also Stock,* 679 A.2d at 761 (holding that an appeal *nunc pro tunc* should be granted to a defendant in a summary criminal case where his privately retained attorney failed to perfect a timely appeal to the court of common pleas).

The dissent draws a distinction between claims of appellate counsel ineffectiveness and claims of appellate-level judicial bias, and asserts that a new appeal is appropriate to remedy the former but not the latter. *See* Concurring and Dissenting Op. at 33-34, n.12. Whether it is a defendant's right to appeal or the due process protection against an unconstitutional potential for bias that is infringed, both scenarios present errors of constitutional magnitude occurring on appeal. A new appeal will vindicate both types of constitutional deprivation. There is no need to fashion a new remedy out of whole cloth when an established remedy will cure the constitutional defect.

As this author recently opined in the OISR in *Taylor*:

> To avoid rendering the Due Process Clause meaningless in the context of an unconstitutional potential for appellate-level judicial bias, Section 9543(a)(2)(i) of the PCRA vindicates constitutional errors that occur at the appellate level. The PCRA requires in Section 9543(a)(2)(i) that the petitioner prove that the conviction or sentence resulted from a constitutional violation which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." A claim that an appellate jurist harbored an unconstitutional potential for bias during a prior proceeding calls into question the constitutionality of that proceeding and undermines the truth-determining process that resulted in that appellate decision.

> The unconstitutional potential for bias of an appellate court judge presents a claim no different in any substantive way from one based upon unconstitutionally deficient representation by appellate counsel. Both are errors of constitutional magnitude that occur at the appellate level. This Court has embraced the PCRA as the sole means of seeking redress for the latter, holding that unconstitutionally deficient representation by appellate counsel may undermine the truth-determining process. *See, e.g., Commonwealth v. Liebel*, 825 A.2d 630, 635-36 ([Pa.] 2003). If a claim based upon the constitutional right to the effective assistance of counsel on appeal is cognizable under the PCRA, there is no basis to hold that a claim of appellate-level judicial bias pursuant to the Due Process Clause is not. A

constitutional violation occurring at the appellate level may undermine the truth-determining process, whatever its source.

*Taylor*, 218 A.3d at 1281–82 (OISR).

To rule that a claim of appellate level judicial bias is not cognizable under the PCRA would effectively hold that there is *no* remedy for this potential due process violation.[9] As a constitutional matter, this is a nonstarter. To strip the Due Process Clause of all remedies to address that clause's violation is to eliminate the underlying right itself. *Ubi jus, ibi remedium* (where there is a right, there is a remedy).[10]

Indeed, the United States Supreme Court has held that a new appeal will remedy the denial of the due process right to an impartial tribunal. *Williams*, 136 S.Ct. 1909-10. In *Williams*, the PCRA petitioner filed a successive petition premised upon newly discovered facts. During discovery, the petitioner learned that then-District Attorney Ronald Castille had signed the sentencing memorandum authorizing the Commonwealth to pursue the death penalty. The PCRA court granted relief. The Commonwealth sought emergency relief in this Court. In the meantime, Ronald Castille had been elected to this Court and was serving as Chief Justice. This Court ultimately vacated the PCRA court's grant of relief and reinstated the death sentence. Upon further appeal, the United States

---

[9]     *See Herring v. United States*, 555 U.S. 135, 157 (2009) (Ginsburg, J., dissenting) (recognizing that a constitutional right ceases to be "something real" when its violation is not remedied) (citing *United States v. Calandra*, 414 U.S. 338, 361 (1974) (Brennan, J., dissenting)).

[10]     *Ubi jus, ibi remedium* translates to: "Where there is a right, there is a remedy." BLACK'S LAW DICTIONARY 1520 (11th ed. 2019). The right to a remedy is, itself, a right protected by due process. *See, e.g., United States v. Loughrey*, 172 U.S. 206, 232 (1898) ("The maxim, '*Ubi jus, ibi remedium,*' lies at the very foundation of all systems of law."); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded. . . . [F]or it is a settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper redress." (quoting Blackstone's Commentaries)). The right to a remedy is a core component of ordered liberty. *Id.*

Supreme Court reversed this Court, holding "that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams*, 136 S.Ct. at 1905. The High Court vacated this Court's decision and remanded for *de novo* appellate review in an unburdened court. *Id.* at 1909-10.

The due process right to an impartial tribunal was vindicated in *Williams* with the award of a new, *de novo* appeal, If Koehler proves the merits of his due process claim (a matter not before us and one as to which we offer no opinion), such constitutional deprivation would likewise require a remedy. Like Williams, Koehler would then be entitled to an opportunity to present his appeal to a court "unburdened by any 'possible temptation . . . not to hold the balance nice, clear and true between the State and the accused.'" *Williams*, 136 S.Ct. at 1910 (citing *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

To the extent that the dissent believes that the precedential effect of *Williams* is only that a higher court can direct a lower court to award a new appeal, *see* Concurring and Dissenting Op. at 27-28, n.10, this reading is not supported by the text of *Williams*. Williams' claim was premised upon a due process violation resulting from an unconstitutional likelihood of bias. The relief Williams sought and obtained was a new appeal unburdened by that unconstitutional likelihood of bias. *Williams*, 136 S.Ct. at 1910. As in *Williams*, the remedy for demonstrating that an appellate tribunal included a jurist with an unconstitutional likelihood of bias would be a new appeal to that tribunal without the participation of the partial jurist.

Other defendants raising due process claims resulting from an unconstitutional likelihood of bias would, if warranted on the merits, also be entitled to this relief. Pursuant to the dissent's characterization of *Williams*, however, only Williams was entitled to a new appeal. All other defendants who raise the same type of claim and request the same

relief afforded to Williams would not, according to the dissent, be entitled to that relief, unless they, like Williams, obtained discretionary review in the Supreme Court and the Supreme Court afforded them a new appeal. This narrow reading of *Williams* would render *Williams* precedential only for Williams, who has already obtained relief. There is nothing in the opinion of the High Court suggesting that the rule of law it announced therein, and the remedy the Court afforded, was available only when the High Court granted *certiorari* and ruled in the case for the defendant. Rather, the nature of precedential opinions is that they create rules of law that extend beyond the case and the parties therein, to afford protections to other similarly situated litigants. *See Hohn v. United States,* 524 U.S. 236, 252–253 (1998) (decisions of the High Court remain binding precedent "until we see fit to reconsider them"); *Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996) (explaining that a majority opinion is binding precedent on the courts of this Commonwealth as to different parties in cases involving substantially similar facts pursuant to the rule of *stare decisis).* The dissent's revisionist construction of *Williams* would amount to this Court telling the High Court that the constitutional right it recognized therein did not reach beyond the parties to that case.

In *Williams*, the Supreme Court held that "Chief Justice Castille's significant, personal involvement in a critical decision in Williams's case gave rise to an unacceptable risk of actual bias. This risk so endangered the appearance of neutrality that his participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.'" *Williams*, 136 S.Ct. at 1908–09 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Any other defendant who can establish an unacceptable risk of actual bias in his or her case would be entitled to the same relief the High Court deemed appropriate in *Williams*. As the High Court explained, "[a]llowing an appellate panel to reconsider a case without the participation of the interested member will permit judges to

probe lines of analysis or engage in discussions they may have felt constrained to avoid in their first deliberations." *Williams*, 136 S.Ct. at 1910. Nothing in *Williams* suggests that this relief was limited to Williams, and nothing in the Court's opinion supports the dissent's interpretation of it.

Were this Court to hold to the contrary, affirming the PCRA court's lack of authority to grant relief to remedy a purported due process violation committed by an appellate court, we would be closing the door to PCRA relief for any constitutional error occurring in the appellate process. There is no logical basis to distinguish between claims of appellate counsel ineffectiveness and claims of judicial bias in the appellate courts, or to hold that the former are cognizable under the PCRA because they undermine the truth-determining process, while the latter are not. Make no mistake: a ruling that claims of appellate-level judicial bias are not cognizable under the PCRA eventually would sound the death knell to all claims of constitutional magnitude that occur in the appellate process, including claims of appellate counsel ineffectiveness.

The PCRA court found itself precluded from granting relief to Koehler, believing it was powerless to impose discipline upon a judicial officer or to enforce the Code of Judicial Conduct. The dissent shares this belief. Concurring and Dissenting Op. at 23-30. But these are irrelevancies. Clearly, the PCRA court had no ability to enforce the Code of Judicial Conduct against Justice Eakin. *Reilly by Reilly*, 489 A.2d at 1298 (acknowledging this Court's exclusive right to supervise the conduct of officers of the judicial branch of government pursuant to Article V, Section 10(c) of the Pennsylvania Constitution). This Court's supervisory authority over the conduct of judges pursuant to Article V, Section 10(c) of our Constitution is unchallenged and is not implicated in this case. Not only is this settled authority unthreatened by the relief that Koehler sought, but

it is also unrelated to any remedy for the alleged constitutional violation of which Koehler complained.

The PCRA court's reasoning and that of the dissent reveal a fundamental misunderstanding of the relief that Koehler sought. Koehler did not ask the PCRA court to impose discipline against Justice Eakin or to enforce the Code of Judicial Conduct as if it were a disciplinary board. Rather, Koehler asked for the opportunity to prove his due process violation and, if he prevailed on the merits, to obtain reinstatement of his PCRA appellate rights *nunc pro tunc*. A PCRA petitioner's ability to vindicate the deprivation of constitutional rights does not disappear when the conduct at issue may also implicate the Code of Judicial Conduct. It is of no comfort to a petitioner who has directly suffered the harm of a substantiated constitutional deprivation that this Court has the authority to police the conduct of jurists. To mean anything, the violation of individual rights requires individualized remedies.

If, as the PCRA court held and the dissent would have it, *Reilly* precludes a petitioner from raising any issue that implicates consideration of a jurist's conduct because of the applicability of the Code of Judicial Conduct, then the same rationale necessarily would preclude a petitioner from challenging the effectiveness of counsel because of the applicability of the Code of Professional Conduct. Such is not the case, as neither the Code of Judicial Conduct nor the Code of Professional Conduct are instruments to enforce individual rights. Courts undeniably possess the authority to grant relief on the grounds of ineffective assistance of counsel, denial of an impartial tribunal, and to remedy due process violations that occur during appellate proceedings, notwithstanding the obligations created in the separately enforced codes of conduct.

The dissent believes that, by awarding relief in this case, the PCRA court would be, essentially, sanctioning a Justice of this Court—an interest that the dissent seems to

believe is more important to guard against than is a violation of a person's constitutional rights. *See* Concurring and Dissenting Op. at 30-31, n.11. Regardless of the collateral consequences of a judicial decision, the primary role of the PCRA court is to afford relief if a petitioner can plead and prove that the facts and circumstances of a particular case demonstrate that the conviction or sentence resulted from a violation of the Pennsylvania Constitution or the Constitution or laws of the United States that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," 42 Pa.C.S. § 9543(a)(2)(i). "The fact that this Court sits atop the judiciary of Pennsylvania does not elevate this Court above the law, nor can it support a conclusion that constitutional deprivations attributable to this Court are insulated from review. The rule of law applies to us as it does to all." *Taylor*, 218 A.3d at 1282 (OISR).

A court's concern cannot principally focus upon the collateral consequences that flow from the vindication of constitutional rights. The judiciary's paramount duty instead lies with the solemn obligation to protect, safeguard, and uphold those rights. While ruling upon a due process violation resulting from an unconstitutional likelihood of bias, the Supreme Court acknowledged the role of statutes or Rules of Professional Conduct, which may provide more safeguards than due process requires. *Williams*, 136 S.Ct. at 1908. Because due process "demarks only the outer boundaries of judicial disqualifications," *id.* (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986)), the High Court recognized that "[m]ost questions of recusal are addressed by more stringent and detailed ethical rules." *Id.* That conduct may prove to be a due process violation simultaneously or is conduct that is regulated by the Code of Judicial Conduct is no reason to ignore constitutional violations. Rather, a court hearing a due process claim is bound to examine the limits of the due process clause. When a defendant's due process rights are violated, the defendant is entitled to relief. We violate our constitutional

duty when we look the other way only because the side effect of such a decision might amount to a sanction of the offending jurist in the court of public opinion. Whether the conduct complained of also may implicate rules or statutes is a collateral consideration; it does not immunize the conduct from constitutional scrutiny.

With regard to the PCRA court's discomfort in addressing a purported constitutional violation occurring in the appellate courts, we rely upon the PCRA itself as providing such a means. If a petitioner can meet the statutory obligation to plead and prove that the facts and circumstances of a particular case demonstrate that the conviction or sentence resulted from a violation of the Pennsylvania Constitution or the Constitution or laws of the United States that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," 42 Pa.C.S. § 9543(a)(2)(i), then the petitioner is entitled to relief under the PCRA. This Court's position at the apex of the Pennsylvania judiciary does not immunize its members from constitutional scrutiny. And this Court ultimately is available always to review lower courts' rulings in this regard.

The dissent believes that the appropriate relief for the unconstitutional potential for appellate-level judicial bias is the reinstatement of the rule-based right to seek reargument. Concurring and Dissenting Op. at 31-33; *Taylor*, 218 A.3d at 1292 (OISA) (citing Pa.R.A.P. 2543). As this author expressed in *Taylor*, a request for reargument to the same appellate court that a litigant is accusing of bias and partiality cannot suffice to vindicate the constitutional right at issue. *Id.* at 1283 (OISR). Given the importance of protecting against even the appearance of partiality, *see, e.g., Williams*, 136 S.Ct. at 1909-10 ("A multimember court must not have its guarantee of neutrality undermined, for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part."), exercising the rule-based right to seek

reargument from the allegedly tainted court would be insufficient to remedy the potential bias in the initial decision and to preserve the appearance and reality of impartial justice. *Taylor*, 218 A.3d at 1283 (OISR).

More importantly, it is the PCRA that is the General Assembly's chosen framework for collateral judicial review of convictions, and that statute is the sole means for seeking and achieving post-conviction relief. 42 Pa.C.S. § 9542; *Commonwealth v. Haun*, 32 A.3d 697, 705 (Pa. 2011). It is the PCRA court that has original jurisdiction over proceedings under the PCRA. 42 Pa.C.S. § 9545(a). The PCRA court not only has statutorily-provided jurisdiction, but is also the appropriate—and, indeed, the only—forum for the evidentiary and factual development that would be needed to substantiate a claim of appellate-level judicial bias.

This Court is not equipped to receive evidence, assess that evidence, or make credibility determinations. A claim of judicial bias may be supported, as it was in this instance, by requests for discovery, leave to amend the petition as the case develops, and requests for an evidentiary hearing to resolve disputed facts. We can expect that claims of judicial bias would require precisely the kind of factual development best suited to the courts of common pleas. And, not coincidentally, the courts of common pleas are also statutorily vested with the exclusive jurisdiction to adjudicate post-conviction claims. 42 Pa.C.S. § 9545(a).

This Court recognized as much when we remanded this case back to the PCRA court to consider the claims in the first instance. We are an appellate court. We require for our appellate review the development of a record as warranted and, where a hearing is appropriate, an assessment of the facts by the trial court hearing the evidence. *See, e.g., Commonwealth v. Montalvo*, 114 A.3d 401, 411 (Pa. 2015) (recognizing that our appellate review depends upon findings of fact, determinations of credibility, and legal

conclusions by the PCRA court); *Commonwealth v. Peoples*, 961 A.2d 109, 110 (Pa. 2008) (*per curiam*) (remanding to the PCRA court "to resolve areas of material factual controversies and credibility disputes . . . and to provide properly framed legal conclusions."); *Commonwealth v. Gibson*, 951 A.2d 1110, 1122 (Pa. 2008) ("[A] developed post-conviction record accompanied by a specific factual finding and legal conclusion is an essential tool necessary to sharpen the issues.").

The proper forum to consider the allegations and evidence of judicial bias is the PCRA court. Once factual and evidentiary development occurs in that forum as needed, and the PCRA court makes its rulings, the appellate court can review those rulings on appeal in due course.

Moreover, the approach suggested by the dissent based upon a litigant's right to request *nunc pro tunc* reconsideration would insulate claims of constitutional error committed by an appellate court from the same relief afforded to remedy other claims of constitutional magnitude that occur on appeal, creating a bifurcated system of post-conviction review, where all post-conviction claims are cognizable under the PCRA, except for post-conviction claims premised upon alleged judicial bias. This suggested bifurcation is inconsistent with the legislature's intent to channel all post-conviction claims into the PCRA's framework as the sole means of obtaining collateral relief from criminal convictions. *See Judge*, 916 A.2d at 520 (recognizing that the legislature intended for the PCRA to encompass all post-conviction claims); *Lantzy*, 736 A.2d at 569-70 (rejecting the suggestion that the PCRA would support a bifurcated system of post-conviction review).

Nor is it apparent how a post-conviction petitioner would obtain reinstatement of the rule-based right to seek reargument. If the answer is that the petitioner should seek reinstatement from the PCRA court, then the same arguments that the dissent makes against the reinstatement of appellate rights *nunc pro tunc* could be made against the

reinstatement of the right to seek reargument *nunc pro tunc.* Whether the PCRA court reinstates appellate rights *nunc pro tunc* or the right to seek reargument *nunc pro tunc*, the PCRA court would be providing a merits-based remedy in the appellate courts.

Addressing the dissent's and the Commonwealth's belief that *Koehler II* is binding precedent and law of the case and, therefore, that the PCRA court lacks the authority to grant *nunc pro tunc* relief, *see* Concurring and Dissenting Op. at 25-29, we observe that the PCRA court's grant of a *nunc pro tunc* appeal would not overturn *Koehler II*. Generally, as with any other grant of relief, if the Commonwealth is dissatisfied with the reinstatement of appellate rights in any given case, it is entitled to appeal the order to the appellate courts, which have the appellate authority to reverse the award of relief if that award is not supported by the record or free from legal error. If the Commonwealth decided not to appeal an award of *nunc pro tunc* relief in favor of a post-conviction petitioner, then the petitioner would exercise the relief afforded by filing the *nunc pro tunc* appeal in the appellate court. The appellate court would then consider the appellate issues presented. The extent to which the appellate court decided to deviate from the court's prior decision in the case would be a matter for the court to decide. In this case, an award of a *nunc pro tunc* appeal by the PCRA court would not vacate or overturn our decision in *Koehler II*. The Commonwealth may choose to appeal the grant of relief. And, if it does not so choose, *Koehler II* would be vacated, overturned, or modified only if this Court, in Koehler's new appeal, decided to vacate, overturn, or modify *Koehler II*. It is not the PCRA court, but this Court, that has the final say on the continuing validity of *Koehler II*.

Moreover, as this author observed in *Taylor*, it is interesting to ponder the ramifications of the Commonwealth's approach "in a scenario where the appellate court that purportedly committed the constitutional violation is not this Court, but the Superior

Court." *Taylor*, 218 A.3d at 1282 n.8 (OISR). If the PCRA court lacks the authority to nullify precedent established by a higher court, suppose, then, two similarly situated post-conviction petitioners each making a claim that the Superior Court committed a constitutional error in adjudicating the prior appeal:

> By happenstance, the Superior Court's decision in the first petitioner's case was published, but the Superior Court's decision in the second petitioner's case was not. The Superior Court decision for the second petitioner would not, therefore, be precedential. Accordingly, the PCRA court would not be disturbing precedent by awarding the second petitioner a *nunc pro tunc* appeal, while the PCRA court would be disturbing precedent by awarding the same relief to the first petitioner. While clearly beyond the scope of this appeal, we would suggest that the availability of redress for constitutional errors should not rest on so frail a distinction.

*Id.*

We also reject the Commonwealth's argument that is premised upon the law of the case doctrine. *See Tilghman*, 673 A.2d at 903 (explaining that a majority opinion is binding on the parties before us under the doctrine of law of the case). Departure from the law of the case is warranted in circumstances "where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create manifest injustice if followed." *Taylor*, 218 A.3d at 1282 (OISR) (quoting *Commonwealth v. Starr*, 664 A.2d 1326, 1332 (Pa. 1995)). Whenever new evidence arises that indicates the potential bias of a sitting jurist, there could be a change in the law and facts that would warrant reconsideration of the prior opinion.

Attempting to erect yet another barrier to the review of Koehler's PCRA petition, the dissent challenges this Court's jurisdiction over the present appeal and raises various justiciability concerns. The dissent believes that the only appropriate disposition of this

appeal is not to correct the PCRA court's mistaken belief about the limits of its authority, but to remand back to the PCRA court, yet again, for consideration of the Commonwealth's answer and, if warranted, disposition on the merits. Only if relief is warranted on the merits of a timely claim, but denied because of the PCRA court's understanding of its authority, does the dissent believe this Court can resolve the question presently raised about the limits of that authority.

Of course, the PCRA's timeliness requirements are jurisdictional, and a PCRA court cannot address the merits of an untimely petition. *Commonwealth v. Abu-Jamal*, 833 A.2d 719, 723–24 (Pa. 2003). But the PCRA court in this case has addressed neither jurisdiction nor the merits of the underlying claim. Rather, the issue the PCRA court believed was dispositive, and which was appealed to this Court, concerns the PCRA court's perceived authority to grant relief. Whether the PCRA court had the authority to grant the requested relief is separable from both merits and jurisdiction. Accordingly, the PCRA court did not run afoul of the jurisdictional requirements of the PCRA; rather, it avoided applying the PCRA entirely out of its mistaken belief in the limits of its own authority.

This belief precluded the PCRA court from addressing the PCRA petition, or even affording the Commonwealth the opportunity to file an answer. Indeed, the PCRA court believed that it was entirely powerless to entertain the PCRA petition. *See* PCRA Ct. Order, 12/28/2017, at 1 ("no purpose would be served by any further proceedings"); ¶ 7 ("This court is powerless to conclude that Justice Eakin demonstrated bias"); ¶ 8 (explaining the PCRA court's belief that only this Court may "pass judgment" on officers of the judicial branch). As a matter of law, the PCRA court's own belief that its authority

was limited was incorrect.  We correct that error now, in a case and controversy where that error precluded the case from moving forward.[11]

If the PCRA court had been correct in its determination, it would have ended the case and obviated the need to address jurisdiction or the merits of the underlying claim. Having concluded that the PCRA court's legal determination was incorrect as a matter of law, this Court must say so.  If this Court does not rectify the PCRA court's misperception, and reverse the order dismissing the petition, the case would be over.  The only reason the PCRA court did not permit the case to develop, which may involve a jurisdictional challenge by the Commonwealth, was its mistaken belief about the limits of its own authority.  This was not a decision premised upon the PCRA or cases interpreting it.  Our reversal of the order dismissing the petition does nothing more than dispel the legal error under which the PCRA court felt it was constrained, and permit the PCRA petition to proceed in the normal course.  This is consistent with our prior remand order directing the PCRA court to dispose of the case.

The PCRA court believed that it was precluded from allowing the case to proceed. It offered a legal analysis to support this disposition.  This legal analysis is the basis of the present appeal, involving two parties advancing arguments for and against the PCRA court's authority.  It is for this Court to resolve the present legal dispute that ended the case in the lower court.

---

[11]   Far from "nonsensical," *see* Concurring and Dissenting Op. at 10, n.4, our decision simply resolves the dispositive issue that ended the case in the court below.  Our opinion addresses whether the PCRA petitioner may proceed to a determination of jurisdiction and/or the merits of this claim.

Had the PCRA court resolved the petition on jurisdictional grounds, jurisdiction would be before us on appeal.[12] Had the PCRA court resolved this case on the merits, an appeal would lie from this merits-based determination. Yet that is not how the PCRA court proceeded. Rather, it decided the case upon a distinct substantive legal ground. The losing party appealed that determination to this Court. We are presented with a dispositive, concrete legal issue, with two opposing arguments and a lower court that dismissed a PCRA petition on the basis of this issue.

The dissent would evoke prudential concerns *sua sponte* to deny review, although the parties themselves do not share its concerns. Here, the concerns raised by the dissent fall within the notion of case or controversy. "Several discrete doctrines— including standing, ripeness, and mootness—have evolved to give body to the general notions of case or controversy and justiciability." *Rendell v. Pennsylvania State Ethics Com'n,*, 983 A.2d 708, 717 (Pa. 2009); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) (identifying standing, ripeness, mootness, and political question, as "doctrines that cluster about [the] Article III" case or controversy requirement (citation omitted)).

The bulk of the dissent's concerns fall under the doctrine of standing. *See City of Phila. v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003) ("The requirement of standing under Pennsylvania law is prudential in nature, and stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract."). Under Pennsylvania law, however, the matter of standing cannot

---

[12] The timeliness of the petition will depend upon the PCRA court's analysis of whether "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence," 42 Pa.C.S. § 9545(b)(1)(ii), and whether the petition was "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

be raised by the courts *sua sponte*. *Rendell*, 983 A.2d at 717; *In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 (Pa. 2006) ("This Court has consistently held that a court is prohibited from raising the issue of standing sua sponte."); *Pittsburgh Palisades Park, LLC, v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005) ("The courts in our Commonwealth do not render decisions in the abstract or offer purely advisory opinions; consistent therewith, the requirement of standing arises from the principle that judicial intervention is appropriate only when the underlying controversy is real and concrete [.]" (internal quotation marks and modifications omitted)). Because the parties do not advance the concerns raised by the dissent, they are not available for *sua sponte* consideration by the Court. *See Rendell,* 983 A.2d at 717 (rejecting consideration of case-or-controversy concerns when they were not raised by the parties).

Turning to the dissent's assertion that this matter is not ripe for disposition because the PCRA court has not yet assessed jurisdiction and resolved the merits of the case, we have recognized that "ripeness [ ] overlaps substantially with standing." *Rendell,* 983 A.2d at 718. In *Rendell*, we noted that it "would be peculiar indeed if we were to maintain that the components of the standing doctrine. . . (including advisory-opinion and hypothetical-verses-concrete aspects) are unavailable for *sua sponte* consideration by the courts, yet nonetheless may be considered *sua sponte* by simply restyling them as ripeness (or, more generally, case-or-controversy or justiciability) concerns." *Id*.

The cases cited by the dissent concern claims of ripeness advanced by the parties, not raised *sua sponte* by the Court. *See Philadelphia Entertainment and Development Partners, L.P. v. City of Philadelphia*, 937 A.2d 385, 391 (Pa. 2007) (resolving an argument that a constitutional challenge to an ordinance was not yet ripe); *Pittsburgh*

*Palisades Park, LLC v. Com.,* 888 A.2d 655, 659 (Pa. 2005) (resolving preliminary objections in the nature of a demurrer contending that the matter was not ripe for adjudication); *Dept. of Environmental Resources v. Jubelirer*, 614 A.2d 204, 212 (Pa. 1992) (declining to opine on the constitutionality of legislation when the parties contested whether the legal question was ripe for disposition); *Pennsylvania Public Utility Comm'n v. Allegheny County*, 203 A.2d 544, 546 (Pa. 1964) (resolving the appellees' argument that the matter was moot and declining to issue an advisory opinion)*; see also Stuckley v. Zoning Hearing Bd. of Newtown Twp.*, 79 A.3d 510, 516 (Pa. 2013) (resolving the argument that an issue had become moot*); Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 1002 (Pa. 2006) (same); *In re Gross*, 382 A.2d 116, 120 (Pa. 1978) (same).

Moreover, "[t]he basic rationale underlying the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements*." Philadelphia Entertainment and Development Partners, L.P. v. City of Philadelphia*, 937 A.2d 385, 392 (Pa. 2007). The disagreement in the present case is far from abstract. It centers on the discrete legal ground that resulted in Koehler's petition being thrown out of court.

More specifically, it is difficult to envision a more focused legal inquiry than addressing the legal basis for the disposition of a PCRA petition that is appealed and contested by both parties. We are deciding the discrete legal issue presented to us by the parties on appeal and abiding by the existing limitations on *sua sponte* judicial review. We have before the Court a narrow legal issue that the lower court believed was dispositive of its ability to assess jurisdiction under the PCRA or resolve the merits of the

underlying claim. The PCRA court believed that it was precluded from resolving the petition on any basis by its perceived limitations. Koehler and the Commonwealth have advanced fully developed legal arguments to the contrary and in support thereof. The extra-record concerns raised by the dissent have no impact on the pertinent legal analysis that this Court must engage in to resolve the present dispute. The substantive legal question we resolve in this case is one that has been raised as precluding PCRA review in another case as well. *See Taylor*, 218 A.3d at 1278 (OISR). Koehler, like Taylor, has yet to have his PCRA petition adjudicated under the terms of the PCRA. Koehler is entitled to review under the PCRA without the PCRA court creating unfounded legal barriers to this review. And the parties, as well as the lower courts, deserve the resolution of this important question and the guidance this Court provides in this opinion.

## IV. Motions for Discovery, Amendment, and a Hearing

Next, we consider Koehler's argument that the PCRA court's mistaken understanding of its authority to grant relief in this case prevented the court from disposing of Koehler's motions for discovery, to amend the PCRA petition, and for an evidentiary hearing. We agree with the Commonwealth that the proper disposition of these outstanding motions is to be addressed in the first instance by the PCRA court. The case should proceed in the normal course, with the PCRA court permitting the Commonwealth to file an answer to the PCRA petition raising whatever arguments the Commonwealth chooses to advance. The parties can then litigate any issues involved with discovery[13]

---

[13] Discovery is appropriate in a serial PCRA petition "upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1).

and any jurisdiction-based argument the Commonwealth may choose to raise; the PCRA court can consider whether to grant leave to amend the PCRA petition;[14] and the PCRA court can determine whether there are any issues of fact warranting an evidentiary hearing.[15]

## V. Entitlement to Relief

Similarly, with respect to the PCRA court's belief that Koehler ultimately sought relief only from his sentence, rather than his conviction, this determination was tied to the PCRA court's erroneous belief that its authority to grant *nunc pro tunc* relief in this case was circumscribed. Having reversed the PCRA court's legal ruling in this regard, it remains to be seen whether Koehler is entitled to relief at all and, if so, whether that relief includes a *nunc pro tunc* appeal solely from the denial of the mitigation claim in his first PCRA appeal, or whether Koehler more broadly is entitled to a *nunc pro tunc* appeal from the dismissal of that petition. This merits-based determination will have to await the potential for further development in due course.

## VI. Conclusion

We recognize that Koehler challenges this Court's consideration of his PCRA appeal in *Koehler II* based upon his allegation of actual bias, the appearance of bias, or the unconstitutional risk that bias affected the adjudication. If Koehler is able to prove this claim on the merits, appropriate relief would include a new appeal free from bias that

---

[14]     A PCRA court may grant leave to amend a PCRA petition at any time, and the court should freely allow amendment "to achieve substantial justice." Pa.R.Crim.P. 905(A).

[15]     The right to an evidentiary hearing is not an absolute one; a court may dismiss a PCRA petition if there are no genuine issues concerning any material fact. *Commonwealth v. Morris*, 684 A.2d 1037, 1042 (Pa. 1996).

infected the previous appeal from the denial of post-conviction relief. Under the PCRA itself, the PCRA court has the inherent authority to grant a *nunc pro tunc* appeal to remedy a due process violation occurring in the prior appeal. We reverse the PCRA court's contrary conclusion, and we remand for further proceedings.

Justice Donohue and Judges King, Kunselman and Nichols join this opinion.

Justice Dougherty files a concurring and dissenting opinion in which Justice Mundy joins.

Judge Nichols files a concurring statement.